## AGREEMENT WITH AN ABUTTING OWNER FOR A REDUCED FARE.

Court of Appeals for Lucas County.

TAYLOR ET AL V. NILES, RECEIVER, ET AL.

Decided, January 25, 1913.

*Contract Between Abutting Landowner and Interurban Railway— Right-of-Way Granted for a Stipulated Fare—Subsequent Purchasers of the Railway Property Bound by its Terms.*

1. A contract between a landowner and an electric interurban railroad company providing for a right-of-way for the company along a public highway extending by the owner's property, and fixing a rate of fare of five cents from that point to the interurban station in a nearby city, is one which a court of equity will specifically enforce.

2. Subsequent purchasers of the railroad property, with knowledge of the contract, are bound by its terms.

3. Such contract is not abrogated by the act, subsequently passed, establishing a railroad commission and providing for the fixing of rates for the transportation of passengers.

*Smith & Beckwith,* for plaintiffs.
*King, Tracy, Chapman & Welles,* contra.

RICHARDS, J.; WILDMAN, J., concurs; KINKADE, J., concurs in the decree entered.

The plaintiffs, John W. Taylor and others, brought this action for the benefit of themselves and all others interested for an order requiring the defendants to perform a contract providing for a rate of fare and enjoining the defendants from charging a fare in excess of that prescribed by the contract referred to in the petition. The case was submitted upon an agreed statement of facts from which it appears that John W. Taylor was the owner in 1902 of a tract of about eighteen acres of land lying a short distance west of the western bounary of the city of Toledo, and that the Toledo & Indiana Railway Company was then obtaining a right-of-way for the construction of an interurban railway. The Taylor property, by the agreed statement of facts, lies on the north side of this public highway and extends to the center line thereof, subject to the right of the public to use the road as a highway. On July 11, 1902, Taylor and the railway company entered into a contract by which he agreed to allow the railway company to construct its line of road on the north half of the public highway extending by his property, and the contract contained as one of its provisions a clause fixing the rate of fare from this property to and from the interurban station in the city of Toledo at five cents. The parties concede that this contract was valid at the time of its execution.

On April 16, 1906, the General Assembly of Ohio passed a statute (98 O. L., 342) establishing a railroad commission and making provision for the regulation of railway rates. The railway company thereafter adopted and published a schedule of rates as required by the act and the same was approved by the commission. While the contract fixed a rate of fare of five cents from the Taylor property to and from the interurban station in the city of Toledo, the schedule rate as thereafter adopted and published by the railway company ignored this agreement and fixed a rate of ten cents between said points. The line of railroad after leaving the western

boundary of the city, passes a station known as Calvary, which
is 3.8 miles from the interurban station, and extending westerly
passes next through a station or stop known as Reynolds, which
is 7.2 miles from the interurban station, while the Taylor prop-
erty lies between Calvary and Reynolds.

In 1908 Niles was appointed by the common pleas court of
this county receiver of the property of the Toledo & Indiana
Railway Company, and in 1910 he conveyed the property, under
an order of court,· to the Toledo & Indiana Traction Company,
which latter company thereafter, by deed duly executed and de-
livered, transferred said railway and all property and assets
which it had received by the sale under order of court to the
Toledo & Indiana Railroad Company, which last named company
is now operating said railroad.

· Taylor conveyed about half of his eighteen-acre tract to the
Taylor Land & Improvement Company, and he owns nearly all
of the stock of said corporation.  It appears from the agreed
statement of facts that at the time of the purchase of the prop-
erty of the railway company by the traction company and the
sale by the traction company to the railroad company, this suit
was pending in the court of common pleas and that both the
traction company and the railroad company had full knowledge
of the execution and terms of the contract already mentioned.

The contention by counsel for defendants is well stated in
their brief filed in the case, as follows:

"1.  It is not a 'covenant running with the land,' and is
therefore not obligatory upon it, as assignee of the Toledo &
Indiana Railway Company, and can not· be enforced by the
plaintiff, The Taylor Land & Improvement Company, as as-
signee of John W. Taylor.
"2.  That by the enactment of what is commonly termed the
public utilities act in the state of Ohio, the agreement has be-
come superseded and invalidated, and can not be enforced."

Multitudes of cases have been decided relative to covenants
running with the land; and the· discussions in the text-books
upon that matter are very numerous.  We shall not enter into

a detailed consideration of the subject. It is apparent that the contract which was made was of substantial value to the Taylor land and that in the language of the books it does "touch" and "concern" the land. It created an easement in this land, the fee in the highway occupied by the railway company being in the adjoining owner, which in this case was the plaintiff, Taylor. We do not think that this case, being one for the equitable consideration of the court, raises a question of a covenant running with the land so much as it raises a question of the right and duty of the court to enforce in equity a compliance with the contract under the circumstances shown. The case of *Brown* v. *Huber et al*, 80 Ohio St., 183, which arose in this county, afforded an opportunity for the Supreme Court in the opinion to state certain principles on questions analogous to the one now under consideration. In the course of the opinion, on page 203, the court quote approvingly the following language:

"We understand, then, that it is a principle upon which all the court unite, that the right to equitable relief in these cases depends upon the following considerations: First. A precedent agreement, in some form, by which a restriction is imposed upon the lot owned or held by defendant for the benefit of the lot owned or held by the plaintiff. Second. In case the agreement is made by the defendant's predecessor in title, notice in some form to the defendant of the fact and nature of the agreement, either from the language of the title deed under which he holds, or otherwise."

"* * * The question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." See also *Lewis* v. *Gollner*, 129 N. Y., 227.

In view of the full notice which these parties had of the contract executed by Taylor and the railway company, containing a provision that it should bind the company's successors and assigns, it would be highly inequitable to refuse to decree an enforcement of the same.

The other contention made by defendants, that the agreement has been superseded and invalidated by the statute above cited, can not receive the assent of this court. That act was under consideration by the Supreme Court in *The Railroad Commission of Ohio* v. *The Hocking Valley Ry. Co.*, 82 Ohio St., 25, and while the matter there determined is not precisely the same as that now before this court, it is apparent from the opinion of the court in construing the statute that the courts in determining the lawfulness of a rate established by a railway company may consider the circumstances disclosed by the evidence relative thereto. In the case now under consideration a vital circumstance not to be overlooked was the existence of this contract, and it should not have been disregarded by the railway company in establishing the rate for the transportation of passengers from the Taylor land to the city, nor in the opposite direction. Its predecessor in title having by contract fixed a rate of five cents for such service, and that contract being binding on the present company, it must be observed. The agreed statement of facts does not show that the rate specified in the contract was unfair or unjust to either company or the public.

The decree of the court will be that the defendants specifically carry out the provisions of the contract, and that they be enjoined from charging a greater rate of fare than is fixed therein. In order to enable the defendants to correct and publish a schedule of rates the carrying out of this decree will be stayed until the 1st day of March, 1913.

Decree for plaintiffs.