# COUNTY OF RIVERSIDE ET AL. *v.* McLAUGHLIN ET AL.

No. 89–1817.  Argued January 7, 1991—Decided May 13, 1991

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, KENNEDY, and SOUTER, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BLACKMUN and STEVENS, JJ., joined, *post*, p. 59. SCALIA, J., filed a dissenting opinion, *post*, p. 59.

*Timothy T. Coates* argued the cause for petitioners. With him on the briefs were *Peter J. Ferguson, Michael A. Bell,* and *Martin Stein.*

*Dan Stormer* argued the cause for respondents. With him on the brief were *Richard P. Herman, Ben Margolis,* and *Elizabeth Spector.\**

---

*Briefs of *amici curiae* urging reversal were filed for the State of California by *John K. Van de Kamp,* Attorney General, *Richard B. Iglehart,* Chief Assistant Attorney General, *Harley D. Mayfield,* Senior Assistant Attorney General, and *Robert M. Foster* and *Frederick R. Millar, Jr.,* Supervising Deputy Attorneys General; and for the District Attorney, County of Riverside, California, by *Grover C. Trask II, pro se.*

*Robert M. Rotstein, John A. Powell, Paul L. Hoffman,* and *Judith Resnik* filed a brief for the American Civil Liberties Union as *amicus curiae* urging affirmance.

Briefs of *amici curiae* were filed for the State of Hawaii et al. by *Warren Price III,* Attorney General of Hawaii, and *Steven S. Michaels,* Deputy Attorney General, *Don Siegelman,* Attorney General of Alabama, *Ron Fields,* Attorney General of Arkansas, *John J. Kelly,* Chief State's Attorney of Connecticut, *Charles M. Oberly III,* Attorney General of Delaware, *James T. Jones,* Attorney General of Idaho, *Neil F. Hartigan,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *James E. Tierney,* Attorney General of Maine, *Frank J. Kelley,* Attorney General of Michigan, *Mike Moore,* Attorney General of Mississippi, *Marc Racicot,* Attorney General of Montana, *Robert M. Spire,* Attorney General of Nebraska, *Robert J. Del Tufo,* Attorney General of New Jersey, *John*

JUSTICE O'CONNOR delivered the opinion of the Court.

In *Gerstein* v. *Pugh*, 420 U. S. 103 (1975), this Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. This case requires us to define what is "prompt" under *Gerstein*.

I

This is a class action brought under 42 U. S. C. § 1983 challenging the manner in which the County of Riverside, California (County), provides probable cause determinations to persons arrested without a warrant. At issue is the County's policy of combining probable cause determinations with its arraignment procedures. Under County policy, which tracks closely the provisions of Cal. Penal Code Ann. § 825 (West 1985), arraignments must be conducted without unnecessary delay and, in any event, within two days of arrest. This 2-day requirement excludes from computation weekends and holidays. Thus, an individual arrested without a warrant late in the week may in some cases be held for as long as five days before receiving a probable cause determination. Over the Thanksgiving holiday, a 7-day delay is possible.

The parties dispute whether the combined probable cause/ arraignment procedure is available to *all* warrantless arrestees. Testimony by Riverside County District Attorney Grover Trask suggests that individuals arrested without

P. *Arnold,* Attorney General of New Hampshire, *Hal Stratton,* Attorney General of New Mexico, *Brian McKay,* Attorney General of Nevada, *Lacy H. Thornburg,* Attorney General of North Carolina, *Robert H. Henry,* Attorney General of Oklahoma, *T. Travis Medlock,* Attorney General of South Carolina, *Roger A. Tellinghuisen,* Attorney General of South Dakota, *Jeffrey L. Amestoy,* Attorney General of Vermont, and *Joseph P. Meyer,* Attorney General of Wyoming; for the County of Los Angeles et al. by *De Witt W. Clinton* and *Dixon M. Holston;* for the California District Attorneys Association by *Michael R. Capizzi;* and for the Youth Law Center by *Mark I. Soler* and *Loren M. Warboys.*

warrants for felonies do not receive a probable cause determination until the preliminary hearing, which may not occur until 10 days after arraignment. 2 App. 298–299. Before this Court, however, the County represents that its policy is to provide probable cause determinations at arraignment for all persons arrested without a warrant, regardless of the nature of the charges against·them. *Ibid.* See also Tr. of Oral Arg. 13. We need not resolve the factual inconsistency here. For present purposes, we accept the County's representation.

In August 1987, Donald Lee McLaughlin filed a complaint in the United States District Court for the Central District of California, seeking injunctive and declaratory relief on behalf of himself and "'all others similarly situated.'" The complaint alleged that McLaughlin was then currently incarcerated in the Riverside County Jail and had not received a probable cause determination. He requested "'an order and judgment requiring that the defendants and the County of Riverside provide in-custody arrestees, arrested without warrants, prompt probable cause, bail and arraignment hearings.'" Pet. for Cert. 6. Shortly thereafter, McLaughlin moved for class certification. The County moved to dismiss the complaint, asserting that McLaughlin lacked standing to bring the suit because he had failed to show, as required by *Los Angeles* v. *Lyons*, 461 U. S. 95 (1983), that he would again be subject to the allegedly unconstitutional conduct — *i. e.*, a warrantless detention without a probable cause determination.

In light of the pending motion to dismiss, the District Court continued the hearing on the motion to certify the class. Various papers were submitted; then, in July 1988, the District Court accepted for filing a second amended complaint, which is the operative pleading here. From the record it appears that the District Court never explicitly ruled on defendants' motion to dismiss, but rather took it off the court's calendar in August 1988.

The second amended complaint named three additional plaintiffs—Johnny E. James, Diana Ray Simon, and Michael Scott Hyde—individually and as class representatives. The amended complaint alleged that each of the named plaintiffs had been arrested without a warrant, had received neither a prompt probable cause nor a bail hearing, and was still in custody. 1 App. 3. In November 1988, the District Court certified a class comprising "all present and future prisoners in the Riverside County Jail including those pretrial detainees arrested without warrants and held in the Riverside County Jail from August 1, 1987 to the present, and all such future detainees who have been or may be denied prompt probable cause, bail or arraignment hearings." 1 App. 7.

In March 1989, plaintiffs asked the District Court to issue a preliminary injunction requiring the County to provide all persons arrested without a warrant a judicial determination of probable cause within 36 hours of arrest. 1 App. 21. The District Court issued the injunction, holding that the County's existing practice violated this Court's decision in *Gerstein*. Without discussion, the District Court adopted a rule that the County provide probable cause determinations within 36 hours of arrest, except in exigent circumstances. The court "retained jurisdiction indefinitely" to ensure that the County established new procedures that complied with the injunction. 2 App. 333–334.

The United States Court of Appeals for the Ninth Circuit consolidated this case with another challenging an identical preliminary injunction issued against the County of San Bernardino. See *McGregor* v. *County of San Bernardino*, decided with *McLaughlin* v. *County of Riverside*, 888 F. 2d 1276 (1989).

On November 8, 1989, the Court of Appeals affirmed the order granting the preliminary injunction against Riverside County. One aspect of the injunction against San Bernardino County was reversed by the Court of Appeals; that determination is not before us.

The Court of Appeals rejected Riverside County's *Lyons*-based standing argument, holding that the named plaintiffs had Article III standing to bring the class action for injunctive relief. 888 F. 2d, at 1277. It reasoned that, at the time plaintiffs filed their complaint, they were in custody and suffering injury as a result of defendants' allegedly unconstitutional action. The court then proceeded to the merits and determined that the County's policy of providing probable cause determinations at arraignment within 48 hours was "not in accord with *Gerstein*'s requirement of a determination 'promptly after arrest'" because no more than 36 hours were needed "to complete the administrative steps incident to arrest." *Id.*, at 1278.

The Ninth Circuit thus joined the Fourth and Seventh Circuits in interpreting *Gerstein* as requiring a probable cause determination immediately following completion of the administrative procedures incident to arrest. *Llaguno* v. *Mingey*, 763 F. 2d 1560, 1567–1568 (CA7 1985) (en banc); *Fisher* v. *Washington Metropolitan Area Transit Authority*, 690 F. 2d 1133, 1139–1141 (CA4 1982). By contrast, the Second Circuit understands *Gerstein* to "stres[s] the need for flexibility" and to permit States to combine probable cause determinations with other pretrial proceedings. *Williams* v. *Ward*, 845 F. 2d 374, 386 (1988), cert. denied, 488 U. S. 1020 (1989). We granted certiorari to resolve this conflict among the Circuits as to what constitutes a "prompt" probable cause determination under *Gerstein*.

## II

As an initial matter, the County renews its claim that plaintiffs lack standing. It explains that the main thrust of plaintiffs' suit is that they are entitled to "prompt" probable cause determinations and insists that this is, by definition, a time-limited violation. Once sufficient time has passed, the County argues, the constitutional violation is complete because a probable cause determination made after that point

would no longer be "prompt." Thus, at least as to the named plaintiffs, there is no standing because it is too late for them to receive a prompt hearing and, under *Lyons*, they cannot show that they are likely to be subjected again to the unconstitutional conduct.

We reject the County's argument. At the core of the standing doctrine is the requirement that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen* v. *Wright*, 468 U. S. 737, 751 (1984), citing *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 472 (1982). The County does not dispute that, at the time the second amended complaint was filed, plaintiffs James, Simon, and Hyde had been arrested without warrants and were being held in custody without having received a probable cause determination, prompt or otherwise. Plaintiffs alleged in their complaint that they were suffering a direct and current injury as a result of this detention, and would continue to suffer that injury until they received the probable cause determination to which they were entitled. Plainly, plaintiffs' injury was at that moment capable of being redressed through injunctive relief. The County's argument that the constitutional violation had already been "completed" relies on a crabbed reading of the complaint. This case is easily distinguished from *Lyons*, in which the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint.

It is true, of course, that the claims of the named plaintiffs have since been rendered moot; eventually, they either received probable cause determinations or were released. Our cases leave no doubt, however, that by obtaining class certification, plaintiffs preserved the merits of the controversy for our review. In factually similar cases we have held that "the termination of a class representative's claim does not moot the claims of the unnamed members of the class." See, *e. g.*,

*Gerstein,* 420 U. S., at 110–111, n. 11, citing *Sosna* v. *Iowa,* 419 U. S. 393 (1975); *Schall* v. *Martin,* 467 U. S. 253, 256, n. 3 (1984). That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction. We recognized in *Gerstein* that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *United States Parole Comm'n* v. *Geraghty,* 445 U. S. 388, 399 (1980), citing *Gerstein, supra,* at 110, n. 11. In such cases, the "relation back" doctrine is properly invoked to preserve the merits of the case for judicial resolution. See *Swisher* v. *Brady,* 438 U. S. 204, 213–214, n. 11 (1978); *Sosna, supra,* at 402, n. 11. Accordingly, we proceed to the merits.

## III

### A

In *Gerstein,* this Court held unconstitutional Florida procedures under which persons arrested without a warrant could remain in police custody for 30 days or more without a judicial determination of probable cause. In reaching this conclusion we attempted to reconcile important competing interests. On the one hand, States have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even where there has been no opportunity for a prior judicial determination of probable cause. 420 U. S., at 112. On the other hand, prolonged detention based on incorrect or unfounded suspicion may unjustly "imperil [a] suspect's job, interrupt his source of income, and impair his family relationships." *Id.,* at 114. We sought to balance these competing concerns by holding that States "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before *or promptly after* arrest." *Id.,* at 125 (emphasis added).

The Court thus established a "practical compromise" between the rights of individuals and the realities of law enforcement. *Id.*, at 113. Under *Gerstein*, warrantless arrests are permitted but persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause. *Id.*, at 114. Significantly, the Court stopped short of holding that jurisdictions were constitutionally compelled to provide a probable cause hearing immediately upon taking a suspect into custody and completing booking procedures. We acknowledged the burden that proliferation of pretrial proceedings places on the criminal justice system and recognized that the interests of everyone involved, including those persons who are arrested, might be disserved by introducing further procedural complexity into an already intricate system. *Id.*, at 119–123. Accordingly, we left it to the individual States to integrate prompt probable cause determinations into their differing systems of pretrial procedures. *Id.*, at 123–124.

In so doing, we gave proper deference to the demands of federalism. We recognized that "state systems of criminal procedure vary widely" in the nature and number of pretrial procedures they provide, and we noted that there is no single "preferred" approach. *Id.*, at 123. We explained further that "flexibility and experimentation by the States" with respect to integrating probable cause determinations was desirable and that each State should settle upon an approach "to accord with [the] State's pretrial procedure viewed as a whole." *Ibid.* Our purpose in *Gerstein* was to make clear that the Fourth Amendment requires every State to provide prompt determinations of probable cause, but that the Constitution does not impose on the States a rigid procedural framework. Rather, individual States may choose to comply in different ways.

Inherent in *Gerstein*'s invitation to the States to experiment and adapt was the recognition that the Fourth Amendment does not compel an immediate determination of proba-

ble cause upon completing the administrative steps incident to arrest. Plainly, if a probable cause hearing is constitutionally compelled the moment a suspect is finished being "booked," there is no room whatsoever for "flexibility and experimentation by the States." *Ibid.* Incorporating probable cause determinations "into the procedure for setting bail or fixing other conditions of pretrial release"—which *Gerstein* explicitly contemplated, *id.,* at 124—would be impossible. Waiting even a few hours so that a bail hearing or arraignment could take place at the same time as the probable cause determination would amount to a constitutional violation. Clearly, *Gerstein* is not that inflexible.

Notwithstanding *Gerstein's* discussion of flexibility, the Court of Appeals for the Ninth Circuit held that no flexibility was permitted. It construed *Gerstein* as "requir[ing] a probable cause determination to be made *as soon as the administrative steps incident to arrest were completed,* and that such steps should require only a brief period." 888 F. 2d, at 1278 (emphasis added) (internal quotation marks omitted). This same reading is advanced by the dissents. See *post,* at 59 (opinion of MARSHALL, J.); *post,* at 61–63, 65 (opinion of SCALIA, J.). The foregoing discussion readily demonstrates the error of this approach. *Gerstein* held that probable cause determinations must be prompt—not immediate. The Court explained that "flexibility and experimentation" were "desirab[le]"; that"[t]here is no single preferred pretrial procedure"; and that "the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole." 420 U. S., at 123. The Court of Appeals and JUSTICE SCALIA disregard these statements, relying instead on selective quotations from the Court's opinion. As we have explained, *Gerstein* struck a balance between competing interests; a proper understanding of the decision is possible only if one takes into account both sides of the equation.

JUSTICE SCALIA claims to find support for his approach in the common law. He points to several statements from the

early 1800's to the effect that an arresting officer must bring a person arrested without a warrant before a judicial officer "'as soon as he *reasonably* can.'" *Post*, at 61 (emphasis in original). This vague admonition offers no more support for the dissent's inflexible standard than does *Gerstein*'s statement that a hearing follow "promptly after arrest." 420 U. S., at 125. As mentioned at the outset, the question before us today is what is "prompt" under *Gerstein*. We answer that question by recognizing that *Gerstein* struck a balance between competing interests.

## B

Given that *Gerstein* permits jurisdictions to incorporate probable cause determinations into other pretrial procedures, some delays are inevitable. For example, where, as in Riverside County, the probable cause determination is combined with arraignment, there will be delays caused by paperwork and logistical problems. Records will have to be reviewed, charging documents drafted, appearance of counsel arranged, and appropriate bail determined. On weekends, when the number of arrests is often higher and available resources tend to be limited, arraignments may get pushed back even further. In our view, the Fourth Amendment permits a reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system.

But flexibility has its limits; *Gerstein* is not a blank check. A State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause. The Court recognized in *Gerstein* that a person arrested without a warrant is entitled to a fair and reliable determination of probable cause and that this determination must be made promptly.

Unfortunately, as lower court decisions applying *Gerstein* have demonstrated, it is not enough to say that probable

cause determinations must be "prompt." This vague standard simply has not provided sufficient guidance. Instead, it has led to a flurry of systemic challenges to city and county practices, putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations. See, *e. g.*, *McGregor* v. *County of San Bernardino*, decided with *McLaughlin* v. *County of Riverside*, 888 F. 2d 1276 (CA9 1989); *Scott* v. *Gates*, Civ. No. 84–8647 (CD Cal., Oct. 3, 1988); see also *Bernard* v. *Palo Alto*, 699 F. 2d 1023 (CA9 1983); *Sanders* v. *Houston*, 543 F. Supp. 694 (SD Tex. 1982), aff'd, 741 F. 2d 1379 (CA5 1984); *Lively* v. *Cullinane*, 451 F. Supp. 1000 (DC 1978).

Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in *Gerstein*, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*. For this reason, such jurisdictions will be immune from systemic challenges.

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the

often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

JUSTICE SCALIA urges that 24 hours is a more appropriate outer boundary for providing probable cause determinations. See *post*, at 68. In arguing that any delay in probable cause hearings beyond completing the administrative steps incident to arrest and arranging for a magistrate is unconstitutional, JUSTICE SCALIA, in effect, adopts the view of the Court of Appeals. Yet he ignores entirely the Court of Appeals' determination of the time required to complete those procedures. That court, better situated than this one, concluded that it takes 36 hours to process arrested persons in Riverside County. 888 F. 2d, at 1278. In advocating a 24-hour rule, JUSTICE SCALIA would compel Riverside County—and countless others across the Nation—to speed up its criminal justice mechanisms substantially, presumably by allotting local tax dollars to hire additional police officers and magistrates. There may be times when the Constitution compels such direct interference with local control, but this is not one. As we have explained, *Gerstein* clearly contemplated a rea-

sonable accommodation between legitimate competing concerns. We do no more than recognize that such accommodation can take place without running afoul of the Fourth Amendment.

Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail. One way to do so is to provide a judicial determination of probable cause immediately upon completing the administrative steps incident to arrest—*i. e.*, as soon as the suspect has been booked, photographed, and fingerprinted. As JUSTICE SCALIA explains, several States, laudably, have adopted this approach. The Constitution does not compel so rigid a schedule, however. Under *Gerstein*, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly. This necessarily means that only certain proceedings are candidates for combination. Only those proceedings that arise very early in the pretrial process—such as bail hearings and arraignments—may be chosen. Even then, every effort must be made to expedite the combined proceedings. See 420 U. S., at 124.

## IV

For the reasons we have articulated, we conclude that Riverside County is entitled to combine probable cause determinations with arraignments. The record indicates, however, that the County's current policy and practice do not comport fully with the principles we have outlined. The County's current policy is to offer combined proceedings within two days, exclusive of Saturdays, Sundays, or holidays. As a result, persons arrested on Thursdays may have to wait until the following Monday before they receive a probable cause determination. The delay is even longer if there is an intervening holiday. Thus, the County's regular practice exceeds the 48-hour period we deem constitutionally

permissible, meaning that the County is not immune from systemic challenges, such as this class action.

As to arrests that occur early in the week, the County's practice is that "arraignment[s] usually tak[e] place on the last day" possible. 1 App. 82. There may well be legitimate reasons for this practice; alternatively, this may constitute delay for delay's sake. We leave it to the Court of Appeals and the District Court, on remand, to make this determination.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BLACKMUN and JUSTICE STEVENS join, dissenting.

In *Gerstein* v. *Pugh*, 420 U. S. 103 (1975), this Court held that an individual detained following a warrantless arrest is entitled to a "prompt" judicial determination of probable cause as a prerequisite to any further restraint on his liberty. See *id.*, at 114–116, 125. I agree with JUSTICE SCALIA that a probable-cause hearing is sufficiently "prompt" under *Gerstein* only when provided immediately upon completion of the "administrative steps incident to arrest," *id.*, at 114. See *post*, at 62–63. Because the Court of Appeals correctly held that the County of Riverside must provide probable-cause hearings as soon as it completes the administrative steps incident to arrest, see 888 F. 2d 1276, 1278 (CA9 1989), I would affirm the judgment of the Court of Appeals. Accordingly, I dissent.

JUSTICE SCALIA, dissenting.

The story is told of the elderly judge who, looking back over a long career, observes with satisfaction that "when I was young, I probably let stand some convictions that should have been overturned, and when I was old, I probably set aside some that should have stood; so overall, justice was

done." I sometimes think that is an appropriate analog to this Court's constitutional jurisprudence, which alternately creates rights that the Constitution does not contain and denies rights that it does. Compare *Roe* v. *Wade*, 410 U. S. 113 (1973) (right to abortion does exist), with *Maryland* v. *Craig*, 497 U. S. 836 (1990) (right to be confronted with witnesses, U. S. Const., Amdt. 6, does not). Thinking that neither the one course nor the other is correct, nor the two combined, I dissent from today's decision, which eliminates a very old right indeed.

## I

The Court views the task before it as one of "balanc[ing] [the] competing concerns" of "protecting public safety," on the one hand, and avoiding "prolonged detention based on incorrect or unfounded suspicion," on the other hand, *ante*, at 52. It purports to reaffirm the " 'practical compromise' " between these concerns struck in *Gerstein* v. *Pugh*, 420 U. S. 103 (1975), *ante*, at 53. There is assuredly room for such an approach in resolving novel questions of search and seizure under the "reasonableness" standard that the Fourth Amendment sets forth. But not, I think, in resolving those questions on which a clear answer already existed in 1791 and has been generally adhered to by the traditions of our society ever since. As to those matters, the "balance" has already been struck, the "practical compromise" reached—and it is the function of the Bill of Rights to *preserve* that judgment, not only against the changing views of Presidents and Members of Congress, but also against the changing views of Justices whom Presidents appoint and Members of Congress confirm to this Court.

The issue before us today is of precisely that sort. As we have recently had occasion to explain, the Fourth Amendment's prohibition of "unreasonable seizures," insofar as it applies to seizure of the person, preserves for our citizens the traditional protections against unlawful arrest afforded by the common law. See *California* v. *Hodari D.*, 499 U. S.

621 (1991). One of those—one of the most important of those—was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate "as soon as he reasonably can." 2 M. Hale, Pleas of the Crown 95, n. 13 (1st Am. ed. 1847). See also 4 W. Blackstone, Commentaries *289, *293; *Wright* v. *Court*, 107 Eng. Rep. 1182 (K. B. 1825) ("[I]t is the duty of a person arresting any one on suspicion of felony to take him before a justice as soon as he reasonably can"); 1 R. Burn, Justice of the Peace 276–277 (1837) ("When a constable arrests a party for treason or felony, he must take him before a magistrate to be examined as soon as he *reasonably* can") (emphasis omitted). The practice in the United States was the same. See, *e. g.*, 5 Am. Jur. 2d, Arrest §§ 76, 77 (1962); *Venable* v. *Huddy*, 77 N. J. L. 351, 72 A. 10, 11 (1909); *Atchison, T. & S. F. R. Co.* v. *Hinsdell*, 76 Kan. 74, 76, 90 P. 800, 801 (1907); *Ocean S. S. Co.* v. *Williams*, 69 Ga. 251, 262 (1883); *Johnson* v. *Mayor and City Council of Americus*, 46 Ga. 80, 86–87 (1872); *Low* v. *Evans*, 16 Ind. 486, 489 (1861); *Tubbs* v. *Tukey*, 57 Mass. 438, 440 (1849) (warrant); Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 254 (1940). Cf. *Pepper* v. *Mayes*, 81 Ky. 673 (1884). It was clear, moreover, that the only element bearing upon the reasonableness of delay was not such circumstances as the pressing need to conduct further investigation, but the arresting officer's ability, once the prisoner had been secured, to reach a magistrate who could issue the needed warrant for further detention. 5 Am. Jur. 2d, Arrest, *supra,* §§ 76, 77; 1 Restatement of Torts § 134, Comment *b* (1934); *Keefe* v. *Hart*, 213 Mass. 476, 482, 100 N. E. 558, 559 (1913); *Leger* v. *Warren*, 57 N. E. 506, 508 (Ohio 1900); *Burk* v. *Howley*, 179 Pa. 539, 551, 36 A. 327, 329 (1897); *Kirk & Son* v. *Garrett*, 84 Md. 383, 405, 35 A. 1089, 1091 (1896); *Simmons* v. *Vandyke*, 138 Ind. 380, 384, 37 N. E. 973, 974 (1894) (dictum); *Ocean S. S. Co.* v. *Williams, supra*, at 263; *Hayes* v. *Mitchell*, 69 Ala. 452, 455 (1881); *Kenerson* v. *Bacon*, 41 Vt. 573, 577 (1869); *Green* v. *Kennedy*, 48 N. Y.

653, 654 (1871); *Schneider* v. *McLane*, 3 Keyes 568 (NY App. 1867); Annot., 51 L. R. A. 216 (1901). Cf. *Wheeler* v. *Nesbitt*, 24 How. 544, 552 (1860). Any detention beyond the period within which a warrant could have been obtained rendered the officer liable for false imprisonment. See, *e. g.*, *Twilley* v. *Perkins*, 77 Md. 252, 265, 26 A. 286, 289 (1893); *Wiggins* v. *Norton*, 83 Ga. 148, 152, 9 S. E. 607, 608–609 (1889); *Brock* v. *Stimson*, 108 Mass. 520 (1871); Annot., 98 A. L. R. 2d 966 (1964).[1]

We discussed and relied upon this common-law understanding in *Gerstein*, see 420 U. S., at 114–116, holding that the period of warrantless detention must be limited to the time necessary to complete the arrest and obtain the magistrate's review.

> "[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a *brief period of detention to take the administrative steps incident to arrest.* Once the suspect is in custody . . . the reasons that justify dis-

---

[1] The Court dismisses reliance upon the common law on the ground that its "vague admonition" to the effect that "an arresting officer must bring a person arrested without a warrant before a judicial officer 'as soon as he *reasonably* can'" provides no more support than does *Gerstein* v. *Pugh's*, 420 U. S. 103 (1975), "promptly after arrest" language for the "inflexible standard" that I propose. *Ante*, at 55. This response totally confuses the present portion of my opinion, which addresses the constitutionally permissible *reasons* for delay, with Part II below, which addresses (no more inflexibly, I may say, than the Court's 48-hour rule) the question of an outer time limit. The latter—how much time, *given the functions the officer is permitted to complete beforehand*, constitutes "as soon as he reasonably can" or "promptly after arrest"—is obviously a function not of the common law but of helicopters and telephones. But what those delay-legitimating functions are—whether, for example, they include further investigation of the alleged crime or (as the Court says) "mixing" the probable-cause hearing with other proceedings—is assuredly governed by the common law, whose admonition on the point is not at all "vague": Only the function of arranging for the magistrate qualifies. The Court really has no response to this. It simply rescinds the common-law guarantee.

pensing with the magistrate's neutral judgment *evaporate.*" *Id.*, at 113–114 (emphasis added).

We said that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty," *id.*, at 114, "either before or promptly after arrest," *id.*, at 125. Though *how* "promptly" we did not say, it was plain enough that the requirement left no room for intentional delay unrelated to the completion of "the administrative steps incident to arrest." Plain enough, at least, that all but one federal court considering the question understood *Gerstein* that way. See, *e. g.*, *Gramenos* v. *Jewel Companies, Inc.*, 797 F. 2d 432, 437 (CA7 1986), cert. denied, 481 U. S. 1028 (1987); *Bernard* v. *Palo Alto*, 699 F. 2d 1023, 1025 (CA9 1983) *(per curiam); Fisher* v. *Washington Metropolitan Area Transit Authority*, 690 F. 2d 1133, 1140 (CA4 1982); *Mabry* v. *County of Kalamazoo*, 626 F. Supp. 912, 914 (WD Mich. 1986); *Sanders* v. *Houston*, 543 F. Supp. 694, 699–701 (SD Tex. 1982), aff'd, 741 F. 2d 1379 (CA5 1984); *Lively* v. *Cullinane*, 451 F. Supp. 1000, 1004 (DC 1978). See also *People ex rel. Maxian* v. *Brown*, 164 App. Div. 2d 56, 62–64, 561 N. Y. S. 2d 418, 421–422 (1990), aff'd, 77 N. Y. 2d 422 (1991); Note, *Williams* v. *Ward:* Compromising the Constitutional Right to Prompt Determination of Probable Cause Upon Arrest, 74 Minn. L. Rev. 196, 204 (1989). But see *Williams* v. *Ward*, 845 F. 2d 374 (CA2 1988), cert. denied, 488 U. S. 1020 (1989).

Today, however, the Court discerns something quite different in *Gerstein.* It finds that the plain statements set forth above (not to mention the common-law tradition of liberty upon which they were based) were trumped by the *implication* of a later dictum in the case which, according to the Court, manifests a "recognition that the Fourth Amendment does *not* compel an immediate determination of probable cause upon completing the administrative steps incident to arrest." *Ante*, at 53–54 (emphasis added). Of course *Gerstein* did not say, nor do *I* contend, that an "immediate" determina-

tion is required. But what the Court today means by "not immediate" is that the delay can be attributable to something other than completing the administrative steps incident to arrest and arranging for the magistrate—namely, to the administrative convenience of combining the probable-cause determination with other state proceedings. The result, we learn later in the opinion, is that what *Gerstein* meant by "a brief period of detention to take the administrative steps incident to arrest" is two full days. I think it is clear that the case neither said nor meant any such thing.

Since the Court's opinion hangs so much upon *Gerstein*, it is worth quoting the allegedly relevant passage in its entirety.

> "Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, . . . or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. In some States, existing procedures may satisfy the requirement of the Fourth Amendment. Others may require only minor adjustment, *such as acceleration of existing preliminary hearings.* Current proposals for criminal procedure reform suggest other ways of testing probable cause for detention. Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this

determination must be made by a judicial officer *either before or promptly after arrest.*"   420 U. S., at 123–125 (footnotes omitted; emphasis added).

The Court's holding today rests upon the statement that "we recognize the desirability of flexibility and experimentation."   But in its context that statement plainly refers to the *nature* of the hearing and not to its *timing.*   That the timing is a given and a constant is plain from the italicized phrases, especially that which concludes the relevant passage.   The timing *is* specifically addressed in the previously quoted passage of the opinion, which makes clear that "promptly after arrest" means upon completion of the "administrative steps incident to arrest."   It is not apparent to me, as it is to the Court, that on these terms "[i]ncorporating probable cause determinations 'into the procedure for setting bail or fixing other conditions of pretrial release' . . . would be impossible," *ante,* at 54; but it is clear that, if and when it is impossible, *Gerstein* envisioned that the procedural "experimentation," rather than the Fourth Amendment's requirement of prompt presentation to a magistrate, would have to yield.

Of course even if the implication of the dictum in *Gerstein* were what the Court says, that would be poor reason for keeping a wrongfully arrested citizen in jail contrary to the clear dictates of the Fourth Amendment.   What is most revealing of the frailty of today's opinion is that it relies upon *nothing* but that implication from a dictum, plus its own (quite irrefutable because entirely value laden) "balancing" of the competing demands of the individual and the State. With respect to the point at issue here, different times and different places — even highly liberal times and places — have struck that balance in different ways.   Some Western democracies currently permit the executive a period of detention without impartially adjudicated cause.   In England, for example, the Prevention of Terrorism Act 1989, §§ 14(4), 5, permits suspects to be held without presentation and without charge for seven days.   12 Halsbury's Stat. 1294 (4th

ed. 1989). It was the purpose of the Fourth Amendment to put this matter beyond time, place, and judicial predilection, incorporating the traditional common-law guarantees against unlawful arrest. The Court says not a word about these guarantees, and they are determinative. *Gerstein*'s approval of a "brief period" of delay to accomplish "administrative steps incident to an arrest" is already a questionable extension of the traditional formulation, though it probably has little practical effect and can perhaps be justified on *de minimis* grounds.[2] To expand *Gerstein*, however, into an authorization for 48-hour detention related neither to the obtaining of a magistrate nor the administrative "completion" of the arrest seems to me utterly unjustified. Mr. McLaughlin was entitled to have a *prompt* impartial determination that there was reason to deprive him of his liberty—not according to a schedule that suits the State's convenience in piggybacking various proceedings, but as soon as his arrest was completed and the magistrate could be procured.

## II

I have finished discussing what I consider the principal question in this case, which is what factors determine whether the postarrest determination of probable cause has been (as the Fourth Amendment requires) "reasonably prompt." The Court and I both accept two of those factors, completion of the administrative steps incident to arrest and arranging for a magistrate's probable-cause determination. Since we disagree, however, upon a third factor—the Court

---

[2] Ordinarily, I think, there would be plenty of time for "administrative steps" while the arrangements for a hearing are being made. But if, for example, a magistrate is present in the precinct and entertaining probable-cause hearings at the very moment a wrongfully arrested person is brought in, I see no basis for intentionally delaying the hearing in order to subject the person to a cataloging of his personal effects, fingerprinting, photographing, etc. He ought not be exposed to those indignities if there is no proper basis for constraining his freedom of movement, and if that can immediately be determined.

believing, as I do not, that "combining" the determination with other proceedings justifies a delay—we necessarily disagree as well on the subsequent question, which can be described as the question of the absolute time limit. Any determinant of "reasonable promptness" that is within the control of the State (as the availability of the magistrate, the personnel and facilities for completing administrative procedures incident to arrest, and the timing of "combined procedures" all are) must be restricted by some outer time limit, or else the promptness guarantee would be worthless. If, for example, it took a full year to obtain a probable-cause determination in California because only a single magistrate had been authorized to perform that function throughout the State, the hearing would assuredly not qualify as "reasonably prompt." At some point, legitimate reasons for delay become illegitimate.

I do not know how the Court calculated its outer limit of 48 hours. I must confess, however, that I do not know how I would do so either, if I thought that one justification for delay could be the State's "desire to combine." There are no standards for "combination," and as we acknowledged in *Gerstein* the various procedures that might be combined "vary widely" from State to State. 420 U. S., at 123. So as far as I can discern (though I cannot pretend to be able to do better), the Court simply decided that, given the administrative convenience of "combining," it is not so bad for an utterly innocent person to wait 48 hours in jail before being released.

If one eliminates (as one should) that novel justification for delay, determining the outer boundary of reasonableness is a more objective and more manageable task. We were asked to undertake it in *Gerstein,* but declined—wisely, I think, since we had before us little data to support any figure we might choose. As the Court notes, however, *Gerstein* has engendered a number of cases addressing not only the scope of the procedures "incident to arrest," but also their dura-

tion.  The conclusions reached by the judges in those cases, and by others who have addressed the question, are surprisingly similar.  I frankly would prefer even more information, and for that purpose would have supported reargument on the single question of an outer time limit.  The data available are enough to convince me, however, that certainly no more than 24 hours is needed.[3]

With one exception, no federal court considering the question has regarded 24 hours as an inadequate amount of time to complete arrest procedures, and with the same exception every court actually setting a limit for a probable-cause determination based on those procedures has selected 24

---

[3] The Court claims that the Court of Appeals "concluded that it takes 36 hours to process arrested persons in Riverside County."  *Ante*, at 57. The court concluded no such thing.  It concluded that 36 hours (the time limit imposed by the District Court) was "ample" time to complete the arrest, 888 F. 2d 1276, 1278 (CA9 1989), and that the county had provided no evidence to demonstrate the contrary.  The District Court, in turn, had not made any evidentiary finding to the effect that 36 hours was necessary, but for unexplained reasons said that it "declines to adopt the 24 hour standard [generally applied by other courts], but adopts a 36 hour limit, except in exigent circumstances."  *McLaughlin* v. *County of Riverside*, No. CV87–5597 RG (CD Cal., Apr. 19, 1989).  2 App. 332.  Before this Court, moreover, the county has acknowledged that "nearly 90 percent of all cases . . . can be completed in 24 hours or less," Brief for District Attorney, County of Riverside, as *Amicus Curiae* 16, and the examples given to explain the other 10 percent are entirely unpersuasive (heavy traffic on the southern California freeways; the need to wait for arrestees who are properly detainable because they are visibly under the influence of drugs to come out of that influence before they can be questioned about *other* crimes; the need to take blood and urine samples promptly in drug cases) with one exception: awaiting completion of investigations and filing of investigation reports by various state and federal agencies.  *Id.*, at 16–17. We have long held, of course, that delaying a probable-cause determination for the latter reason—effecting what Judge Posner has aptly called "imprisonment on suspicion, while the police look for evidence to confirm their suspicion," *Llaguno* v. *Mingey*, 763 F. 2d 1560, 1568 (CA7 1985)—is improper.  See *Gerstein*, 420 U. S., at 120, n. 21, citing *Mallory* v. *United States*, 354 U. S. 449, 456 (1957).

hours. (The exception would not count Sunday within the 24-hour limit.) See *Bernard* v. *Palo Alto*, 699 F. 2d, at 1025; *McGill* v. *Parsons*, 532 F. 2d 484, 485 (CA5 1976); *Sanders* v. *Houston*, 543 F. Supp., at 701–703; *Lively* v. *Cullinane*, 451 F. Supp., at 1003–1004. Cf. *Dommer* v. *Hatcher*, 427 F. Supp. 1040, 1046 (ND Ind. 1975) (24-hour maximum; 48 if Sunday included), rev'd in part, 653 F. 2d 289 (CA7 1981). See also *Gramenos* v. *Jewel Companies, Inc.*, 797 F. 2d, at 437 (four hours "requires explanation"); Brandes, Post-Arrest Detention and the Fourth Amendment: Refining the Standard of *Gerstein* v. *Pugh*, 22 Colum. J. L. & Soc. Prob. 445, 474–475 (1989). Federal courts have reached a similar conclusion in applying Federal Rule of Criminal Procedure 5(a), which requires presentment before a federal magistrate "without unnecessary delay." See, *e. g.*, Thomas, The Poisoned Fruit of Pretrial Detention, 61 N. Y. U. L. Rev. 413, 450, n. 238 (1986) (citing cases). And state courts have similarly applied a 24-hour limit under state statutes requiring presentment without "unreasonable delay." New York, for example, has concluded that no more than 24 hours is necessary from arrest to *arraignment*, *People ex rel. Maxian* v. *Brown*, 164 App. Div. 2d, at 62–64, 561 N. Y. S. 2d, at 421–422. Twenty-nine States have statutes similar to New York's, which require either presentment or arraignment "without unnecessary delay" or "forthwith"; eight States explicitly require presentment or arraignment within 24 hours; and only seven States have statutes explicitly permitting a period longer than 24 hours. Brandes, *supra*, at 478, n. 230. Since the States requiring a probable-cause hearing within 24 hours include both New York and Alaska, it is unlikely that circumstances of population or geography demand a longer period. Twenty-four hours is consistent with the American Law Institute's Model Code. ALI, Model Code of Pre-Arraignment Procedure § 310.1 (1975). And while the American Bar Association in its proposed rules of criminal procedure initially required that presentment simply be

made "without unnecessary delay," it has recently concluded that no more than six hours should be required, except at night. Uniform Rules of Criminal Procedure, 10 U. L. A. App., Criminal Justice Standard 10–4.1 (Spec. Pamph. 1987). Finally, the conclusions of these commissions and judges, both state and federal, are supported by commentators who have examined the question. See, *e. g.*, Brandes, *supra*, at 478–485 (discussing national 24-hour rule); Note, 74 Minn. L. Rev., at 207–209.

In my view, absent extraordinary circumstances, it is an "unreasonable seizure" within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (1) for reasons unrelated to arrangement of the probable-cause determination or completion of the steps incident to arrest, or (2) beyond 24 hours after the arrest. Like the Court, I would treat the time limit as a presumption; when the 24 hours are exceeded the burden shifts to the police to adduce unforeseeable circumstances justifying the additional delay.

\*     \*     \*

A few weeks before issuance of today's opinion there appeared in the Washington Post the story of protracted litigation arising from the arrest of a student who entered a restaurant in Charlottesville, Virginia, one evening, to look for some friends. Failing to find them, he tried to leave—but refused to pay a $5 fee (required by the restaurant's posted rules) for failing to return a red tab he had been issued to keep track of his orders. According to the story, he "was taken by police to the Charlottesville jail" at the restaurant's request. "There, a magistrate refused to issue an arrest warrant," and he was released. Washington Post, Apr. 29, 1991, p. 1. That is how it used to be; but not, according to today's decision, how it must be in the future. If the Fourth Amendment meant then what the Court says it does now, the student could lawfully have been held for as long as it would

have taken to arrange for his arraignment, up to a maximum of 48 hours.

Justice Story wrote that the Fourth Amendment "is little more than the affirmance of a great constitutional doctrine of the common law." 3 J. Story, Commentaries on the Constitution 748 (1833). It should not become less than that. One hears the complaint, nowadays, that the Fourth Amendment has become constitutional law for the guilty; that it benefits the career criminal (through the exclusionary rule) often and directly, but the ordinary citizen remotely if at all. By failing to protect the innocent arrestee, today's opinion reinforces that view. The common-law rule of *prompt* hearing had as its primary beneficiaries the innocent—not those whose fully justified convictions must be overturned to scold the police; nor those who avoid conviction because the evidence, while convincing, does not establish guilt beyond a reasonable doubt; but those so blameless that there was not even good reason to arrest them. While in recent years we have invented novel applications of the Fourth Amendment to release the unquestionably guilty, we today repudiate one of its core applications so that the presumptively innocent may be left in jail. Hereafter a law-abiding citizen wrongfully arrested may be compelled to await the grace of a Dickensian bureaucratic machine, as it churns its cycle for up to two days—never once given the opportunity to show a judge that there is absolutely no reason to hold him, that a mistake has been made. In my view, this is the image of a system of justice that has lost its ancient sense of priority, a system that few Americans would recognize as our own.

I respectfully dissent.