In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-2905

DARNELL FONDER, THERESA DIETZ, and STEVEN MOORE, individually and on behalf of a class,

*Plaintiffs-Appellants*,

*v.*

SHERIFF OF KANKAKEE COUNTY, ILLINOIS, and KANKAKEE COUNTY, ILLINOIS,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-CV-2115 — **Colin S. Bruce**, *Judge*.

ARGUED APRIL 18, 2016 — DECIDED MAY 26, 2016

Before EASTERBROOK and SYKES, *Circuit Judges*, and ADELMAN, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. The Sheriff of Kankakee County, Illinois, has a written policy requiring a careful vis-

___

[*] Of the Eastern District of Wisconsin, sitting by designation.

ual inspection (a "strip search") of every arrestee before that
person enters the general population at the Jerome Combs
Detention Center. The policy permits manual body-cavity
inspections of some arrestees. Three arrestees filed this suit
to contest the Sheriff's policy to the extent it applies to per-
sons whose custody has not yet been approved by a judge.
(Police may take as long as two days before presenting an
arrested person to a judge for a probable-cause determina-
tion. See *Riverside County v. McLaughlin*, 500 U.S. 44 (1991).)

The district judge certified this class: "All persons held in
the custody of the Sheriff of Kankakee County from April 20,
2010 to the date of entry of judgment who, following a war-
rantless arrest, were strip searched in advance of a judicial
determination of probable cause." 2013 U.S. Dist. LEXIS
148026 at *11 (C.D. Ill. Oct. 15, 2013). The court later held
that the Sheriff's policy is valid as applied to the class so de-
fined. 2015 U.S. Dist. LEXIS 177622 (C.D. Ill. Aug. 24, 2015).

That decision relies principally on *Florence v. Burlington
County*, 132 S. Ct. 1510 (2012). The Court held in *Florence* that
the Constitution permits officials to conduct strip searches
and body-cavity inspections of arrested persons before they
enter a jail's general population. The Justices observed that
arrestees may be concealing drugs, knives, money, or other
contraband (including sharp objects such as pens that may
be used as weapons); may have diseases (or just be carrying
lice); and may have gang tattoos that could lead to violence.
Custodians are entitled to take precautions before placing
new arrivals in the general population. *Florence* rejected a
contention that persons arrested for minor offenses must be
excluded from these searches. 132 S. Ct. at 1520–21.

The district court thought the approach of *Florence* sound whether or not a new arrival has been taken before a judge. That makes sense: the Court's rationale depends on the arrested person's placement in the general population, not on the way in which pretrial custody has been justified (by indictment, arrest warrant, or post-arrest judicial ruling about probable cause). The need to find weapons and contraband is *greatest* on a person's initial arrest; postponing inspection until after a probable-cause hearing misses the opportunity to keep contraband or disease out of the general population. But there is a mismatch between the rationale of *Florence* and the class definition in this suit—for the class includes all arrestees, *whether or not* they enter a jail's general population.

Chief Justice Roberts and Justice Alito both concurred specially in *Florence* to warn against reading the Court's opinion to authorize automatic strip searches of people who are not bound for the general population. As Justice Alito observed, many arrestees are released without going into the general population. 132 S. Ct. at 1524. Some are not detained beyond the time needed to post a bond; others may be held in areas devoted to arrestees whose custody has not received judicial approval. And the record of this case demonstrates the point. At least two members of the class—Zorica Petrovic and Cyquim James—contend that they were arrested, strip searched, and then immediately released. Perhaps others are in that category. If they are telling the truth, they have good claims that their rights have been violated. Yet they are members of the class defined by the district court and so are barred by principles of preclusion from filing their own suits.

There is another problem with the district court's disposition: the policy in practice may differ from the policy as written. During discovery several guards testified that they permit arrestees to undress behind a curtain, take a shower, and don prison-issued clothing before emerging. Other guards said that they require arrestees to undress and shower in front of them, but the guards avert their eyes or give only cursory attention. Still other guards stated that they conduct strip searches or body-cavity inspections only for persons charged with certain crimes, or when the arresting officers suggest a strip search. The district court did not determine whether these guards correctly described the jail's practice. Instead the judge found that the power to conduct a strip search of every arrestee implies the lesser power to inspect a subset of all arrestees.

That approach is not sound. *Florence* deemed the strip-search policy reasonable precisely because *every* arrestee going into the general population was examined for contraband, lice, disease, and gang tattoos. Searching half or two-thirds or four-fifths of the new arrivals will not prevent the introduction of lice or disease, or outbreaks of gang violence, and it cuts down the ability of the policy to curtail contraband. Indeed, *Florence* observed that, if some new arrivals are exempted from inspection, inmates may rely on them (or perhaps compel them) to import drugs, cell phones, money, knives, or other forbidden articles. 132 S. Ct. at 1521. If some guards predictably fail to inspect new arrivals closely, that creates a reliable way to smuggle contraband into a prison. And searching on an arresting officer's say-so poses a risk of harassment, or letting the process be the punishment.

Kankakee County does not contend that it would be reasonable to inspect a subset of all newly arriving inmates. Instead it denies that any guards deviate from the written policy. But we have read the guards' declarations, and several of them *say* that they are implementing their personal ideas about how much visual inspection is needed. If these statements reflect ongoing behavior, then it is hard to see how *Florence* can supply the support that the Sheriff's policy needs. The record as it stands presents a disputed question of material fact that may require a trial to resolve, unless the parties can work out their differences by stipulation.

The district judge implied that the class had waived or forfeited its opportunity to contest how the policy works in practice by proposing a definition that includes all newly arrested persons. Yet when this suit began, and the definition was proposed, class counsel had no reason to think that the jail's staff was doing something other than what the written policy requires. Classes are certified early in a suit. Fed. R. Civ. P. 23(c)(1)(A). All certifications are tentative. Fed. R. Civ. P. 23(c)(1)(C). If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified or subclasses certified. A class defined early in a suit cannot justify adjudicating hypothetical issues rather than determining the legality of what actually happens. The class definition must yield to the facts, rather than the other way 'round.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.