In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2948

LISA ALCORN, as Administrator of the Estate of Tyler Lumar,
*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, ILLINOIS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 5859 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 19, 2023 — DECIDED OCTOBER 12, 2023

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Tyler Lumar caused a ruckus at a medical clinic in Chicago. Called to the scene, police discovered that Lumar was wanted on an arrest warrant and took him into custody. About 19 hours later he committed suicide while waiting for a bail hearing. Lisa Alcorn, as administrator of his estate, contends in this suit under 42 U.S.C. §1983 that defendants are liable because Lumar should have

been released without waiting for a bond hearing. Had he been released swiftly, Alcorn asserts, Lumar would not have killed himself.

Alcorn presents three principal arguments: first, that the warrant itself set a bond, which Lumar should have been allowed to post immediately; second, that detention should not have been extended after an officer accused him of possessing cocaine in jail; third, that defendants are responsible for Lumar's suicide. The district court did not agree with any of these contentions and entered judgment for the defendants. 631 F. Supp. 3d 534 (N.D. Ill. 2022); 2022 U.S. Dist. LEXIS 175961 (N.D. Ill. Sept. 28, 2022). We take them up in order.

The warrant set bond at $500. Under the system Illinois used at the time, a suspect could be released by posting 10% of the bond in cash. Lumar had more than $100 in his pocket when arrested, and Alcorn maintains that the police should have taken $50 and let him go without ado. Problem: The warrant had been issued in Lee County, about 100 miles to the west of Chicago, while Lumar was arrested in Cook County. General Administrative Order 2015-06, issued by the Chief Judge of the Circuit Court of Cook County, requires local bond hearings for all persons arrested on warrants issued by courts in Illinois but outside Cook County. Chicago's police were abiding by this order. See Bureau of Patrol Directive 15-0174. Alcorn contends that this order is inconsistent with Illinois law, which permits arrestees to waive local bond hearings. 725 ILCS 5/109-2(b). Lumar wanted to waive a hearing, post bond, and leave. By refusing to allow him to do this, Alcorn maintains, the police violated the Fourth Amendment (applied to state actors by the Fourteenth).

We may assume that the Chief Judge's order is inconsistent with state law, to the extent it denies arrestees the right to waive local bond hearings. It is not clear whether waiver would have worked to Lumar's advantage, for the state law adds: "If a person so arrested waives such right [to a local bond hearing], the arresting agency shall surrender such person to a law enforcement agency of the county that issued the warrant without unnecessary delay." The record does not show how long it would have taken Chicago's police to hand Lumar over to officials in Lee County. But the answer does not matter, because Lumar's claim rests on the Fourth Amendment, not on Illinois law—and a violation of state law does not permit an award of damages under §1983. See, e.g., *Virginia v. Moore*, 553 U.S. 164 (2008). The federal rule for how much time police can take to present an arrested person to a judge is the subject of *Riverside County v. McLaughlin*, 500 U.S. 44 (1991), and Alcorn does not contend that the police exceeded the bounds set by that decision.

Instead Alcorn wants us to conclude that the police delayed unreasonably—where state law defines reasonableness. Her brief contends:

> Plaintiff … does not seek enforcement of state law. The violation of Illinois law is nonetheless significant, and its discussion compulsory, because it demonstrates Tyler Lumar's detention was needless, and thus unreasonable under the Fourth Amendment.

This is an argument to apply state law by another name. The right question, for federal purposes, is whether it would violate the Constitution for police to present every detainee for a prompt bond hearing in the county of arrest. In other words, the federal court should assume that the police acted exactly as they were supposed to act under state law, then ask whether acting in this way is unconstitutional. See, e.g.,

*Gordon v. Degelmann*, 29 F.3d 295, 300–01 (7th Cir. 1994). Given *Riverside*, the answer is obvious. Federal law does not prohibit presenting the arrestee to a local judge, provided that this is accomplished in a reasonable time not to exceed 48 hours. 500 U.S. at 56. The district court explained why the time Lumar spent in custody before his suicide, including six hours in a hospital to address breathing problems, was reasonable as a matter of federal law. 631 F. Supp. 3d at 543–44.

The police arrested Lumar at 3:58 pm on August 18, 2016. The next morning they took him to Cook County Jail for a bond hearing. He was placed with many other detainees into "Bullpen 23". Officer Wlodarski, who was supervising this area, testified that he saw Lumar pick up a bag and drop it behind a bench. The bag, when recovered, contained 12 rocks of crack cocaine. The Sheriff's Office, which runs the Jail, returned Lumar to the Police Department. He hanged himself in a cell at the stationhouse before he could be sent back to the Jail for a bond hearing.

Alcorn contends that Wlodarski lacked probable cause to arrest Lumar for possessing cocaine. The district judge found otherwise, observing that Wlodarski's testimony is undisputed (a video of Bullpen 23 is inconclusive, and Lumar is no longer able to contest Wlodarski's statements). For our part, we don't see why the dispute about probable cause matters. Probable cause is essential to make a custodial arrest, but Lumar was already in custody. His return to the station caused delay in presenting him to a judge for a bond hearing, but delay is justified when reasonable, a standard lower than probable cause. See *Riverside*, 500 U.S. at 56–57. As we have said already, Alcorn does not contend that the aggregate

delay was excessive under the standard set by the Supreme Court in *Riverside*.

This brings us to the final contention: that the defendants did not do enough to prevent Lumar from hanging himself and so are liable under the Illinois Wrongful Death Act, 740 ILCS 180/1. This claim comes up short because, as the district judge observed, the police lacked any reason to suspect that Lumar was at risk. Suicide watch is exceedingly unpleasant for a detainee, who must give up clothing, shoelaces, bedding, and anything else that could be used for self-harm. It is undignified and unpleasant, a status to be avoided unless a risk of self-harm is evident. Yet nothing in Lumar's medical or custodial history suggested a problem. He was screened for suicide risk shortly after his arrest and denied having any thoughts of self-harm; this answer, coupled with the absence of objective risk indicators, led to his placement in a regular cell with normal surveillance intervals. He was screened again at the hospital, again without any suggestion of risk.

Illinois law offers a remedy for suicide during custody only if the jailers do something that makes suicide foreseeable; otherwise detainees are responsible for their own choices. See *Stanphill v. Ortberg*, 2018 IL 122974 ¶35. Alcorn contends that violations of Lumar's constitutional rights so maddened him that the police drove him to kill himself. Yet we have concluded that the police did not violate any of his rights under federal law—and a few hours' delay in having a bond hearing does not foreseeably cause detainees to commit suicide. Alcorn does not cite, and we did not find, any decision in Illinois finding liability under remotely similar circumstances.

AFFIRMED