**UNITED STATES of America,
Plaintiff,**

v.

**Hector VENTURA MELENDEZ, Angel Ventura Melendez, Defendants.**

**CRIM. NOS. 01–243 (DRD),
01–244(DRD).**

United States District Court,
D. Puerto Rico.

Dec. 29, 2001.

Jorge E. Vega–Pacheco, U.S. Attorney's Office, Hato Rey, PR, for U.S.

Linda Backiel, San Juan, PR, for defendant.

### *AMENDED OPINION AND ORDER*

DOMINGUEZ, District Judge.

Pending before the Court are Defendants' Response to Prosecution's Trial Memo (Docket No. 37), Defendants' Supplemental Response to Prosecution's Trial Memo (Docket No. 42), Defendants' Motion for Reconsideration of Opinion and Order (Docket No. 43), and Defendants'

Reply to Prosecution Trial Memorandum on Mere Presence, Jurisdiction and Proof of an Offense Other than that Alleged (Docket No. 48).

██ The Court examines a Rule 29 motion reviewing the evidence "in the light most amiable to the government, and taking all reasonable inferences in its favor, [so that] a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully prove[s] the essential elements of the crime." *United States v. Hernandez,* 146 F.3d 30, 32 (1st Cir.1998); *see also United States v. O'Brien,* 14 F.3d 703, 706 (1st Cir.1994). A request for acquittal is, of course, not examined in the light most favorable to the government. The Court reserves judgment on acquittal based on reasonable doubt for final arguments to be made in open court, later on this same date. Nonetheless, for the reasons that follow, the Court hereby **DENIES** Defendants' motions.

### I

### Defendants' Response to Prosecution's Trial Memo and Defendants' Supplemental Response to Prosecution's Trial Memo

The Court begins by analyzing Defendants' Response to Prosecution's Trial Memo (Docket No. 37) and Defendants' Supplemental Response to Prosecution's Trial Memo (Docket No. 42). In these motions, Defendants specifically attack the contention that they received reasonable notice before trespassing the temporary security zone that surrounded the beaches of Camp Garcia in Vieques, which was established by the Coast Guard during the naval exercises that took place at the time of their arrests. They contend that the regulation that established the temporary security zone around the U.S. Naval installations in Camp Garcia (33 C.F.R. § 165.7)

was not lawful because it was required to be previously published before being enforced. Although the Court agrees with Defendants insofar as governmental regulations, as a general rule, must be published in advance in order to be enforced, it cannot ignore that there are pivotal exceptions applicable here.

■ The Court accepts Defendants arguments that the security zone was not formally published nor was there evidence that the security zone was published in town halls or in churches as in the past, prior to Navy maneuvers. Notwithstanding, the court finds that the Coast Guard's regulation were exempt from the notice-and-comment-rule-making-and-advance-publication requirements set forth in the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, because such requirements do not apply to the military affairs of the United States. *See* 5 U.S.C. § 553(a)(1). Additionally, said requirements are inapplicable when they become "impracticable, unnecessary or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). And final publication thirty days prior to a rule's effective date is unnecessary "for good cause." 5 U.S.C. § 553(d)(3). Notwithstanding these exemptions, the Court will further analyze Defendants' contentions.

■ Defendants were charged with violating 18 U.S.C. § 1382, which provides that it is unlawful to go "upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station or installation, for any purpose prohibited by law or lawful regulation...." Notwithstanding, they contend the Due Process and Ex Post Facto Clause of the Constitution were violated in this case because, at the time of their arrest on waters of the Caribbean Sea, they were never "reasonably notified" of the legal prohibition to trespass the temporary security zone established by the Coast Guard.

Defendants' argument that they were not reasonably notified is unacceptable. The First Circuit has repeatedly explained that:

> [W]hen a prosecution proceeds on the theory that a defendant purposes to enter a restricted military reservation without authorization, **the government must show that the defendant had knowledge or notice, actual or constructive,** that such entry was prohibited. Absent such knowledge or notice, the showing of purpose is incomplete.

*United States v. Maxwell,* 254 F.3d 21, 24 (1st Cir.2001) (citation omitted) (emphasis added).

Even accepting as true Defendants' version of the facts in this case, the Court is left with only one acceptable conclusion: they had **actual knowledge** that the security zone had been established prior to their trespass. Defendants themselves accept that—**at the least**—the Coast Guard not only tried to notify them, but went so far as to try to physically prevent them from trespassing. A person cannot seriously argue that he had no knowledge or notice that he was trespassing while admitting he intentionally ignored such notice. But in their response to the prosecution's memorandum Defendants do just that:

> [T]he only evidence of "actual notice" from which the prosecution seeks a conclusion that defendants had "actual knowledge" of the regulation is to the effect that a Coast Guard vessel went **chasing** after a group of 8 fishing vessels as they approached an imaginary line in the sea, **and yelled to them** (over the noise of 9 outboard engines, at least on 75 HP and on 90[-]the Coast Guard's) that **they had to stop their boats because they were about to enter a security zone.**
>
> . . . As none of the boats responded as desired, the Coast Guard continued the

chase until it was able to stop the slowest vessel—Defendant's—and immediately handcuffed them.[1]

It is clear from this that Defendants themselves accept that the Coast Guard approached their vessel when their boat began to enter the security zone, and **specifically warned them that they were entering a restricted area.** They have even accepted that the Coast Guard tried to stop them from trespassing, and that they **purposely ignored its command.** But more importantly, not only did they purposely trespass into the security zone **notwithstanding the Coast Guards command not to enter, they nevertheless sped off defiantly,** deeper into the zone, initiating a high speed chase on the seas. Defendants allege that since the prohibition to enter the security zone was not properly or actually notified to them, hence they cannot be found to have violated a "lawful regulation" under 18 U.S.C. § 1382. The Court rejects the contention. The Court concludes that the evidence examined in the light most favorable to the government, as required under Rule 29, establishes that the Coast Guard intercepted the Defendants, yelled at them to stop, in an attempt to impede transgression into a security zone only to receive from them obscene words followed by a defiant speed-off. As a matter of fact, the only version of facts as to what occurred on the sea on that morning was provided by the Government, the testimony of Chief Carlos A. Hernandez, a bilingual Coast Guard officer who testified as to the notice provided in Spanish to Defendants to stop and not trespass any further to the east. Hand signals were also used urging Defendants to stop to no avail.

It is one thing to argue that the Government **never** notified a party affected of a recently issued regulation; it is another to boldly state that one **intentionally fled** when the Government indeed tried to admonish one, and even **tried to physically prevent one,** from transgressing the law. Hence, the Court cannot accept Defendants' bald assertion that they did not receive actual notice, particularly because they have themselves admitted to intentionally refuse receiving such notice. Hence, pursuant to FED.R.CRIM.P. 29, and examining the evidence in the light most favorable to the Government, *Hernandez,* 146 F.3d at 32, the Court cannot accept the Defendants' contention

In the general course of maritime activity in our jurisdiction, sailors simply cannot ignore the Coast Guard's orders. When they decided to ignore the Coast Guard's orders and charge on defiantly, they were not running away innocently. They knew the Coast Guard was not chasing them for play. To accept their contention, at this stage, would turn the Court into a believer of fairytales. Certainly, "judges are not fools required to believe what ordinary citizens do not accept." *Carrasquillo v. Aponte Roque,* 682 F.Supp. 137, 141 note 1 (D.Puerto Rico 1988) (citing *Pueblo v. Luciano Arroyo,* 83 D.P.R. 573 (1961)).

Therefore, **even if Defendants did not receive a written notice, even if there was no formal notice on commercial radio, even if they did not hear the radio messages on VHF radio broadcast periodically in English and Spanish, and even if there was no publication in the town hall or in the churches,** the Court finds that the Coast Guard indeed notified them personally as to the transgression into the security zone. Although the Court agrees with Defendants in that there was no testimony or other evidence

---

1. See Defendants' Response to Prosecution's Trial Memo, pp. 2–3 (Docket No. 37) (emphasis added).

that any loudspeaker, megaphone or other device was used, the Coast Guard has no obligation to use these devices when enforcing the law. The fact is, Defendants' knew the Coast Guard was warning them not to enter, but they failed to heed the warnings; instead they insulted the Coast Guard and preferred to be chased down until the Coast Guard "fouled the screws" of their boat in order to forcibly stop it. Hence, at trial it was undoubted that Defendants had **actual notification or knowledge** that they were trespassing illegally. And in the jurisdiction of the First Circuit, that is sufficient notification to satisfy the Constitution. *Maxwell*, 254 F.3d at 24; *see also United States v. Mowat*, 582 F.2d 1194, 1201–1203 (9th Cir. 1978) ("the fact that the requirement of publication was not satisfied does not affect the prosecution of the defendants if they had actual knowledge of the prohibition"). Therefore, Defendants' argument is dismissed. Thus, Defendants' request for dismissal, in Docket Nos. 37 and 42, is hereby **DENIED.**[2]

## II

### Defendants' Motion for Reconsideration of Opinion and Order

The Court turns next to Defendants' Motion for Reconsideration of Opinion and Order (Docket No. 43). They first argue that the Court should reconsider its finding that the 48 hour rule was not violated. However, the Court notes that Defendants have failed to bring forth new arguments or point to new evidence regarding this issue. Thus, the Court shall simply summarize its previous holding and deny Defendants' request for reconsideration. (See Docket No. 36).

As the Court previously has held, when an arrest is made without a warrant, the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause; hence, an arrestee may be detained for up to **48 hours** without having a magistrate determine whether there was probable cause for the arrest. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 55–58, 111 S.Ct. 1661, 114 L.Ed.2d 49, (1991). However, **the 48–hour rule is not written on stone.** *See Anderson v. Calderon*, 232 F.3d 1053, 1069 (9th Cir.2000) ("this 48–Hour Rule is not absolute"). Unnecessary delay in bringing defendants before the Court should always be determined in light of all the facts and particular circumstances of each case.

The Supreme Court in *McLaughlin* clearly explained that "unreasonable delay" is a "delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661. If probable cause determination does not occur within 48 hours, then the burden automatically shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. *Id.*, at 57, 111 S.Ct. 1661. The Supreme Court has further cautioned that intervening weekends **do not qualify** as an "extraordinary circumstance." *Id.*

In the instant case, the Defendants, together with **scores** of other protesters, were detained and arrested **during a weekend.** After being detained on the sea of the south side of the Island of Vieques, on Saturday, April 28, 2001, around noon, they were escorted to Camp Garcia, a na-

**2.** There is other circumstantial evidence that points to knowledge of the notice. For example, the weekend when the facts occurred a large number of protesters entered Camp Garcia. Further, a fleet of boats assembled in Esperanza Bay that morning, and one of them had television-type cameras. Moreover, the fleet proceeded together crossing the security zone.

val installation on Vieques, where the process of identification began. That process had not concluded when night fell because of the large number of entries on this date at Camp Garcia. Due to safety concerns, maritime transportation of the detainees had to wait until the morning. The next day (Sunday), Defendants were transported on boat from Camp Garcia to Roosevelt Roads, a Naval base located on the main island. That trip by sea usually lasts well over an hour. Once at Roosevelt Roads, the military personnel finished identifying, interviewing, and photographing over 100 detainees, including the Defendants. As the Court has noted before, the final process at the Naval base has become necessary since many detainees are reluctant to disclose their personal information, in an effort to challenge the Government.

Thereafter, the detainees are finally turned-over to the U.S. Marshall to be arrested and transferred to the MDC, in San Juan. When they finally arrived at the MDC in San Juan, it was nighttime, on Sunday, April 29, 2001. Furthermore, the logistics entailed in the arrest, processing and transportation of the Defendants to San Juan were unusually complicated. The majority of the Deputy U.S. Marshals available in the District were on duty in Vieques—not San Juan as usual. Upon arrival at the MDC, the U.S. Marshals realized they did not have sufficient personnel to transfer over 100 arrestees from the MDC to the District Court. Accordingly, special administrative measures had to be taken, and the arrestees had to wait until the next day, Monday, April 30, 2001, to have their the initial appearance. On that day, **more than 125 arrestees** had their initial appearances.

Notwithstanding that the 48–hour rule was transgressed by approximately six (6) hours, **the Court finds that extraordinary circumstances were present in this case. Hence, the Court finds that there was no unnecessary delay in bringing the Defendants before a Magistrate Judge for initial appearance, on Monday afternoon, April 30, 2001.**

Lastly, in their motion for reconsideration, Defendants again take issue with respect to the legality of the notification of the Coast Guard's regulation that established the temporary security zone they trespassed. However, they do not raise new arguments. In fact, Defendants reiterate essentially the same arguments above discussed and dismissed. Therefore, on the basis of the analysis set forth above, the Court concludes that it will not reconsider the conclusions reached in the Opinion and Order issued on December 3, 2001 (See Docket No. 36). Hence, Defendants' Motion for Reconsideration of Opinion and Order is hereby **DENIED** (Docket No. 43).

### III

**Defendants' Reply to Prosecution Trial Memorandum on Mere Presence, Jurisdiction and Proof of an Offense Other than that Alleged**

Finally, the Court addresses Defendants' Reply to Prosecution Trial Memorandum on Mere Presence, Jurisdiction and Proof of an Offense Other than that Alleged (Docket No. 48). The first issue raised by way of motion for judgment of acquittal is whether there is sufficient evidence to convict the passengers of the vessel under 18 U.S.C. § 1382. Defendants argue that no reasonable jury could find that the passenger (as opposed to the driver) **deliberately** entered the zone since he was not steering or controlling the vessel. Defendants invite the Court to assume, *arguendo*, that both persons aboard the vessel heard and understood the shouted warnings proffered by the Coast Guard, but still conclude that, as a matter of law, the evidence is insufficient to convict the

passive passenger because he was not steering the vessel. In other words, Defendants urge that the element of "purpose" required by a section 1382 offense is absent with respect to the passenger. The Court declines this invitation, however.

The Court accepts Defendants' premise that purpose is an element of a section 1382 offense. Accordingly, the Government must show that the defendant had knowledge or notice, actual or constructive, that such entry was prohibited. *United States v. Parrilla Bonilla,* 648 F.2d 1373, 1377 (1st Cir.1981). However, the Court underscores the from the outset that *"the case law is consentient that an unauthorized entry itself can constitute the prohibited purpose necessary to sustain a conviction under 1382."* *Maxwell,* 254 F.3d at 24 (emphasis added). Moreover, the First Circuit holding in the recent case of *United States v. Sued–Jimenez,* 275 F.3d 1 (1st Cir.2001), is particularly on point here:

> a showing of illegal purpose for entry onto a restricted military base requires two elements: deliberate entry onto the base and knowledge or notice such entry was prohibited. In Maxwell ... we held that the Department of the Navy's regulations, promulgated at 32 C.F.R. §§ 770.35–770.40 are sufficient to satisfy the knowledge or notice requirement that military installations in Puerto Rico are off limits to the public. Thus, all the government has to prove at trial to satisfy the illegal purpose element is that the defendant deliberately entered the naval base.

*Id.* (citations omitted).

■ The proffered evidence in this case is contrary to Defendants' contentions. They have as much as admitted to having been arrested inside the security zone es-

tablished by the Coast Guard, (although they contend, as will be seen *infra,* that this does not constitute part of the naval lands for purposes of section 1382). Additionally, when the Coast Guard began engaging the fleet, the Defendants'—which includes, of course, the passenger—began shouting defiantly, "Carajo!" and other similar explicatives.[3] These expressions unmistakably lead to the conclusion that the passenger was not an innocent bystander, or that he had been suddenly sequestered, as the Defendants seem to suggest. Moreover, the fact that fishing equipment was found on board does not change the fact that they trespassed voluntarily—Defendants' were, after all, riding a fisherman's boat. The Court thus finds that, at this stage, the Government has met its burden of proving deliberate entry because there was notice as to both that such entry was prohibited under *Sued–Jimenez, id.,* and there was also evidence that they entered the prohibited sea area. *See United States v. Zenon–Encarnacion et al.,* 185 F.Supp.2d 127 (D.P.R.2001).

■ Finally, the other theory argued extensively by the Defendants is that the prosecution has failed to prove that the offense occurred on lands reserved for the exclusive jurisdiction of the United States, that is, Camp Garcia. The main thrust of their argument is that the waters where Defendants were arrested cannot be considered part of the governmental "lands," under section 1382. Instead, they argue, these waters were "placed under the jurisdiction of Puerto Rico" by Congress.

Although the Court is tempted to analyze extensively this argument in order to expound its premises in detail, it should

---

3. This Spanish term is considered foul language and is generally used to express dis-

gust, at times of surprise or anger.

suffice to refer Defendants to authoritative cases dismissing it. *United States v. Ventura–Melendez*, 275 F.3d 9 (1st Cir.2001) ("Puerto Rico's jurisdiction over the shore line was established subject to the control of the United States. Thus, a large swath of area extending beyond the shoreline of the beach was permissibly designated as part of the 'danger zone' by federal regulation."); *United States v. de Jesus*, 108 F.Supp.2d 68 (D.P.R.).[4]

Therefore, in light of the above, Defendants' Reply to Prosecution Trial Memorandum on Mere Presence, Jurisdiction and Proof of an Offense Other than that Alleged is **DENIED.** (Docket No. 48).

### IV

### CONCLUSION

**WHEREFORE,** after examining a Rule 29 motion "reviewing the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor . . .," *Hernandez*, 146 F.3d at 32; *and O'Brien*, 14 F.3d at 706, the Court hereby **DENIES** Defendants' motions.

**IT IS SO ORDERED.**

---

4. In addition thereto, the First Circuit Court in *United States v. Silva–Rosa et al.,* 275 F.3d 18 (1st Cir.2001), rejected the defendants' arguments as to the *posse comitatus* appointment of the Special Assistant United States Attorney by the Attorney General (naval officers may act as Special Assistant United States Attorney because the prohibition in law does not "contain[ ] any limitation on the persons who the Attorney General may appoint." *United States v. Allred,* 867 F.2d 856, 871 (5th Cir.1989)).