SHIRLEY S. ABRAHAMSON, C.J.
¶ 41. (concurring). I concur in the mandate. The defendant's state *22 ment is to be suppressed. I join the part of the majority opinion concluding that Edler's statement in the police car was an unequivocal, unambiguous invocation of his right to counsel such that the subsequent waiver at the station was invalid under Edwards.[1]
¶ 42. A person being interrogated in custody does not have to use the precise words "I want a lawyer" to invoke the right to counsel. In discussing whether a defendant's statement about counsel is an unequivocal request for counsel, the Texas Supreme Court wisely observed: "While police often carry printed cards to ensure precise Miranda warnings, the public is not required to carry similar cards so they can give similarly precise responses."[2] This court should follow this sage, practical advice.
¶ 43. I write separately because I do not agree with the majority opinion that the court should fully adopt the 14-day rule of Maryland v. Shatzer, 559 U.S. 98 (2010).
¶ 44. There is no need in the present case for the court to decide whether to adopt the Shatzer rule. The defendant's invocation of the right to counsel at the second interrogation decides the present case. The statements made after invocation of the right to counsel must be suppressed.
¶ 45. If I were to reach the Shatzer issue, I would follow Shatzer to the extent of holding that law enforcement's subjecting a suspect — who has invoked his right to counsel and has been released from custody — to custodial interrogation within the Shatzer *23 14-day period violates Miranda[3] and Edwards unless the suspect reinitiates the conversation or a lawyer is made available.
¶ 46. Law enforcement obligations under state law for the first 14 days would thus be governed by and be in sync with the bright-line rule set under federal law.[4] I would adopt this 14-day prophylactic rule under the court's superintending and administrative authority Wis. Const. Art. VII, § 3(1).[5]
¶ 47. I would not adopt Shatzer's prophylactic rule that after the 14-day period Edwards has no effect.[6] *24 Under Edwards, once a suspect invokes the right to counsel during custodial interrogation, a subsequent waiver of that right "cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of bis rights."[7]
¶ 48. The Shatzer decision and today's majority opinion are based entirely on an unsupported generalization about all suspects, namely that a 14-day break in custody and interrogation will somehow overcome the concern of coercion and compulsion that is the basis for the Edwards line of cases. The Shatzer Court speculated that "[i]t seems to us that" a period of "14 days . . . provides plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive effects of his prior custody."[8]
¶ 49. I agree with Justice John Paul Stevens that this speculation "may well prove inaccurate in many circumstances."[9] Fourteen days is an arbitrary figure.[10]
*25 When police have not honored an earlier commitment to provide a detainee with a lawyer, the detainee likely will "understan[d] his (expressed) wishes to have been ignored" and "may well see future objection as futile and confession (true or not) as the only way to end his interrogation.". .. Simply giving a "fresh set of *26 Miranda warnings" will not " 'reassure' a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled.' "[11]
¶ 50. As Justice Stevens wrote, Edwards may require a longer period than 14 days, under the circumstances of a case, for a court to conclude that a sufficient break in custody occurred to dissipate the lingering coercive effects of the prior interrogation.[12]
*27 ¶ 51. If a court is not willing to extend Edwards indefinitely and the court concludes that the coercive effects of the prior interrogation may dissipate with time, then the court should determine whether the coercive effects have dissipated in that particular case. A court should take an individualized approach to the dissipation of the coercive effects of the prior interrogation, not a generalized one. Under these circumstances, the court should hold that after the 14-day period ends, the presumption established by Edwards continues and the State has the burden of proving by clear and convincing evidence that time has dissipated the coercive effects of the prior interrogation in that case.
¶ 52. In these situations, the court should consider the totality of circumstances including the age, education, and intelligence of the suspect; the physical, psychological and emotional condition of the suspect; and the suspect's prior experience with police to determine whether the coercive effects of the prior interrogation have dissipated. The personal characteristics of the suspect must be viewed along with the police tactics used, such as the time between interrogations and length of the interrogations, the general conditions under which the statements were made, the physical and psychological pressures brought to bear on the suspect, the inducements and strategies used by law enforcement, the prior relationship between the interrogating officer and the suspect, and the circumstances ensuing in the period between the suspect's exercising the right to counsel and the re-interrogation.
*28 ¶ 53. Examining whether the coercive effects of the prior interrogation have dissipated comports with the genuine concern for individual voluntariness required by Miranda and Edwards, rather than a blanket generalization about human reaction to subsequent or repeated interrogations, and assists law enforcement officers in governing their conduct.[13]
¶ 54. In the present case, after validly invoking his right to counsel with regard to the arson investigation, the 17-year-old defendant was released from custody. Then, 19 days later — after law enforcement had covertly placed a wire on the defendant's young friend —the same detective whom the defendant had previously refused to talk to showed up at his home to arrest him again to discuss the same investigation. As the defendant was led away to the squad car, his father told him to be honest and to cooperate with the detectives.
¶ 55. We know that at no time was the defendant provided an attorney as he requested during the custodial interrogation. The State has not suggested that the defendant "initiate [d] further communication, exchanges, or conversations with the police."[14]
¶ 56. Further inquiry is necessary about this particular defendant and the circumstances, beyond just saying that 14 days passed, before I can join an opinion concluding, as a matter of law, that the coercive effects of the prior interrogation had dissipated.
¶ 57. For the reasons set forth, I write separately.

 Edwards v. Arizona, 451 U.S. 477 (1981).

 In re H.V., 252 S.W3d 319, 326 (Tex. 1998) (footnote omitted).

 Miranda v. Arizona, 384 U.S. 436 (1966).

 Nevertheless, I agree with Justice Thomas, who wrote in Shatzer that "an otherwise arbitrary rule is not justifiable merely because it gives clear instruction to law enforcement officers." Shatzer, 559 U.S. 98, 119 (2010) (Thomas, J., concurring).

 See, e.g., In re Jerrell C.J., 2005 WI 105, ¶¶ 40-41, 283 Wis. 2d 145, 699 N.W2d 110 (relying on Art. VII, § 3(1)).
Citing numerous law review articles, Professor LaFave discusses the criticism of the United States Supreme Court's reliance on prophylactic rules rather than administratively based rules as follows:
In general, commentators have criticized the Court's explanation of its utilization of prophylactic rules (often even though agreeing with the rules themselves). The commentators cite the Court's failure to fully explain its authority to prescribe such rules, the Court's failure to fully explain the difference (if any) between prophylactic and administratively based per se rules, the Court's failure to provide clear guidelines as to when the imposition of a prophylactic rule is justified, the Court's inconsistency in its use of the "prophylactic" characterization in describing what appear to be functionally similar standards, and the Court's failure to establish any significant guidelines for determining when safeguards provided by legislation are sufficient to replace the prophylactic standards.
1 Wayne R. LaFave, Crim. Proc. § 2.9(h) (3d ed. 2007 & Supp. 2012).

 The Shatzer court explained that after a 14-day break in custody, Edwards is no longer in effect but a defendant is "free *24 to claim the prophylactic protection of Miranda — arguing that his waiver of Miranda rights was in fact involuntary under Johnson v. Zerbst." Shatzer, 559 U.S. at 110-11 n.7 (internal citations omitted).

 Edwards, 451 U.S. at 484. This court has stated that such a waiver is presumed to be invalid. State v. Harris, 199 Wis. 2d 227, 251-52, 544 N.W.2d 545 (1996).

 Shatzer, 559 U.S. at 110 (2010).

 Id. at 123-24 n.7 (Stevens, J., concurring).
In Arizona v. Roberson, the United States Supreme Court explained as follows: "[T]o a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." Arizona v. Roberson, 486 U.S. 675, 686 (1988).

 The Shatzer court admitted that "while it is certainly *25 unusual for this Court to set forth precise time limits governing police action, it is not unheard-of." Shatzer, 559 U.S. 98, 110 (2010). Ironically, the only case the Shatzer court cites for its "unusual" decision to set forth a time limit held that police must bring forth a person arrested without a warrant to a magistrate judge within 48 hours to establish probable cause for continued detention. Shatzer, 559 U.S. 98, 110 (2010) (citing County of Riverside v. McLaughlin, 500 U.S. 44 (1991)). The McLaughlin Court recognized a presumption that up to a 48-hour delay in holding the probable cause hearing after arrest was reasonable and hence constitutionally permissible.
In McLaughlin, the Court required law enforcement to do something within a short specified period of time in order to protect the rights of the accused, while in Shatzer, the Court concluded that if law enforcement refrains from doing something for a sufficient period of time, the accused's rights have been sufficiently respected.
Still, in McLaughlin, the Court held that even if law enforcement complied with the 48-hour mandate, the accused may still prove a Constitutional violation. McLaughlin, 500 U.S. at 56-57 (1991).
See Zadvydas v. Davis, 533 U.S. 678, 701, 712 (2001) (citing McLaughlin, 500 U.S. at 56-58) (noting that the 48-hour rule was based on the court of appeals' determination of the time required to complete a probable cause hearing). In contrast, the 14-day period selected in Shatzer bears no relationship to the needs of law enforcément, the characteristics of the suspect, or the circumstances that occur during the 14 days.
See also Jessica A. Davis, Casenote, Another Tweak to Miranda: The Supreme Court Significantly Limits the Edwards Presumption of Involuntariness in Custodial Interrogation, 36 S. Ill. U. L.J. 593, 608 (2012) ("According to the majority, fourteen days is sufficient for the coercive pressures to custodial interrogation to disappear because it says so.").

 Shatzer, 559 U.S. 98, 121-22 (2010) (Stevens, J., concurring) (citations omitted) (quoting Davis v. United States, 512 U.S. 452, 472-73 (1994) (Souter, J., concurring in judgment); Roberson, 486 U.S. at 686).

 As Justice Stevens commented:
The most troubling aspect of the Court's time-based rule is that it disregards the compulsion caused by a second (or third, or fourth) interrogation of an indigent suspect who was told that if he requests a lawyer, one will be provided for him. When police tell an indigent suspect that he has the right to an attorney, that he is not required to speak without an attorney present, and that an attorney will be provided to him at no cost before questioning, the police have made a significant promise. If they cease questioning and then reinterrogate the suspect 14 days later without providing him with a lawyer, the suspect is likely to feel that the police lied to him and that he really does not have any right to a lawyer.
Shatzer, 559 U.S. 98, 121 (2010) (Stevens, J., concurring).
See Kit Kinports, The Supreme Court's Love-Hate Relationship with Miranda, 101 J. Crim. L. & Criminology 375, 386 (2011) ("[Ojnce a suspect is released from custody, she is not entitled to state-provided counsel (assuming charges have not yet been filed). For those unable to afford private lawyers, then, a fourteen-day break in custody does not provide a meaningful opportunity to obtain legal advice.") (footnote omitted).
See also Ilian M. Romano, Note & Comment, Is Miranda on the Verge of Extinction? The Supreme Court Loosens Miranda's Grip in Favor of Law Enforcement, 35 Nova L. Rev. 525, 535 (2011) (presenting the following hypothetical application of Shatzer: "This holding expressly permits police to engage in a tactic where, once a suspect invokes his right to counsel, police *27 simply release the suspect, wait fourteen days, and try again hoping this time the suspect is not intelligent enough to invoke his right to counsel, which may not have been provided to him the first time around.").

 See Hannah Misner, Comment, Maryland v. Shatzer: Stamping a Fourteen-Day Expiration Date on Miranda Rights, 88 Denv. U. L. Rev. 289, 305 (2010).

 Edwards, 451 U.S. at 485.