PAUL A. BONIN, Judge.
| jK.W., a child, was taken into custody without an order or warrant and held for *800 longer than forty-eight hours without a judicial determination on whether probable cause existed to justify his continued detention. K.W. was finally brought before a juvenile-court judge six days after being taken into custody. At that time, K.W.’s counsel orally moved for his immediate release under La. Ch.C. art. 814 D. The judge denied that motion and proceeded to conduct a hearing to determine whether probable cause existed; at the conclusion of that hearing, the judge found probable cause.
K.W. applied for supervisory review on an emergency basis. We now peremptorily grant the application and, finding that the juvenile-court judge’s ruling was based on an erroneous view of controlling law, hold that she abused her discretion in denying KW.’s motion. Accordingly, we reverse her ruling and order the immediate release of K.W. to the care of his parents or guardian.
We explain our decision in more detail below.
I
We begin by describing the constitutional protection guaranteed by the Fourth Amendment against being taken into custody without an order or warrant Land being detained beyond — at the outside limit — forty-eight hours in the absence of bona fide emergency or other extraordinary circumstance without a determination of probable cause by a neutral magistrate. See State v. Wallace, 09-1621, p. 4 (La.11/6/09), 25 So.3d 720 723. Because “custody” in delinquency proceedings is the functional equivalent of an “arrest” in adult criminal proceedings, the police officer’s seizure of K.W. should be examined for constitutional purposes as a warrant-less arrest. See La. Ch.C. art. 812 A (“A child may be taken into custody ... pursuant to the laws governing arrest.”); La. Ch.C. art. 812 B (“The taking of a child into custody is not an arrest, except for the purpose of determining its validity under the Constitution of the United States or the Constitution of Louisiana.”).
The Fourth Amendment protects the “right of the people to be secure in their persons ... against unreasonable ... seizures.” U.S. Const, amend. IV. See also La. Const, art. I, § 5. The Fourth Amendment guards against warrantless arrests and subsequent prolonged detention without a determination by a neutral magistrate of whether probable cause existed to justify that seizure. The foundation of this mandate is grounded in our society’s abhorrence of “extended incarceration based on mere accusation.” Wallace, 09-1621, p. 10, 25 So.3d at 727 (Weimer, J., concurring).
To comply with the requirements of the Fourth Amendment, states must “provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.” Gerstein v. Pugh, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). This “promptness” standard emerged from the Supreme Court’s efforts to find a balance between the district attorney’s “strong interest in | ^protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity, even when there has been no opportunity for a prior determination of probable cause” and the harms of “prolonged detention based on incorrect or unfounded suspicion.” County of Riverside v. McLaughlin, 500 U.S. 44, 52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).
The Supreme Court, in Riverside, later found “promptness” as a standard to *801 be too vague and lacking in sufficient guidance for proper practices. Id. at 56, 111 S.Ct. 1661. In clarifying, the Court held that “a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein.” Id. “Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes, [and] the arrested individual does not bear the burden of proving unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.” Id. at 56-57, 111 S.Ct. 1661.
The bedrock constitutional protections contained in the Riverside decision also apply to juveniles in delinquency proceedings. See Application of Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (“[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone.”). See also La. Ch.C. art. 808 (“All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings.”).[1]
“In response to [Riverside], states quickly codified the 48-hour probable cause determination rule.” Wallace, 09-1621, p. 6, 25 So.3d at 724. Louisiana, in |4the year following the opinion, statutorily complied with the holding in Riverside with regards to both adults and juveniles accused of crimes. See La.C.Cr.P. art. 230.2; La. Ch.C. art. 814 D.
II
' In this Part we address the juvenile-court judge’s two justifications for denying KW.’s motion for release from custody as expressed in her per curiam provided to us at our request.[2] Both of her justifications, however, are based on erroneous views of controlling law. A trial judge necessarily abuses her discretion in denying a motion to quash if her ruling is based on an erroneous view of the law. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); see also State v. Hayes, 10-1538, p. 11 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, 15; United States v. Taylor, 487 U.S. 326, 336, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (noting that “discretionary choices are not left to a court’s inclination, but to its judgment,” which is guided by sound legal principles). If a trial judge in exercising her discretion “bases [her] ruling upon an erroneous view or application of the law, [her] ruling is not entitled to our deference.” State v. Dillon, 11-0188, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 473, 476.
A
One justification offered by the juvenile-court judge is that the Gerstein-Riverside-required probable cause determination can' be aggregated with other proceedings, such as the bail determination and appointment of counsel, and, more importantly for our purposes, that the 48-hour limit is exclusive of weekends and |holidays. While it is true that the constitution allows for some additional delay in a magistrate’s finding of probable cause in order to permit states to aggregate pro *802 ceedings, under no circumstance, however, does that constitute a basis for extending detention without a finding of probable cause beyond the 48-hour limit. See Riverside, 500 U.S. at 57, 111 S.Ct. 1661 (“A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.”). And just as critical is that the 48-hour period is, contrary to the juvenile-court judge’s view, inclusive of and not exclusive of weekends and holidays. Id. (“The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends.”)(emphasis added). See also La. Ch. C. art. 814 D (“Within forty-eight hours after the child has been taken into custody, including legal holidays within the time computation, the court shall review the affidavit, and if it determines that probable cause exists, the child shall be held for a continued custody hearing pursuant to Article 819.”) (emphasis added).
Thus, when K.W. was taken into custody without a court order or judicial warrant at 1.2:32 P.M. on February 12, 2014, the constitution demands that by the latest at 12:32 P.M. on February 14, 2014, either a judicial officer will have made a finding of probable cause for his continued custody or that he is to be immediately released from custody.
B
The other justification offered by the juvenile-court judge is that KW.’s custody was by virtue of a judicial warrant and therefore Gersteinr-Riverside does not apply. As we understand the juvenile-court’s explanation, there was a warrant |fiwhich issued. We have neither the warrant, nor the application submitted in support of the warrant. But it seems, based upon our reading of her per curiam, that the warrant named four persons, but not K.W., and that the application must have described a fifth person as one of the perpetrators of the felony-grade delinquent act (armed robbery). From the information developed at the probable cause hearing held beyond the 48-hour limit, the trial judge concluded that the fifth person described in the application but unnamed in the warrant was K.W. From this, she concludes that KW.’s custody was not warrantless.[3] We disagree.
“[I]ndiscriminate searches and seizures conducted under the authority of general warrants’ were the immediate evils that motivated the framing and adoption of the Fourth Amendment.” Payton v. New York, 445 U.S. 573, 583, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). “The Fourth Amendment’s requirement that a warrant particularly describe the place to be searched, and the people to be seized,’ repudiated these general warrants and makes general searches impossible and prevents the seizure of one thing under a warrant describing another.’ ” Berger v. New York, 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (internal punctuation omitted). Here, there was no determination by a neutral magistrate as to whether probable *803 cause existed to take K.W. into custody prior to his seizure. The arrest warrant was in effect a “general warrant” to seize an unidentified assailant. Probable cause must be found as to a particular person prior to seizure in order to circumvent the requirements of Gerstein-Riverside.
17Thus, because we necessarily conclude that a warrant which does not particularly describe the person to be seized is no warrant at all, we again find that this justification offered by the juvenile-court is based upon an erroneous view of the law and to the extent that she based her denial of his immediate release on such a view, she abused her discretion in denying K.W.’s immediate release.
Ill
We now turn to examine the district attorney’s opposition to KW.s application. At the outset we note that the district attorney’s opposition is not based upon either justification proffered by the trial judge. The district attorney concedes that there was no probable cause determination within the 48-hour limit but argues that the relief of immediate release should not be afforded to K.W. for two reasons. First, La. Ch.C. art. 814 D does not provide a remedy for its violation. Second, a subsequent finding of probable cause justified KW.’s continued custody and, as we understand the argument, cures the theretofore illegal continued detention.
A
We first consider the district attorney’s more general point which is that Article 814 D, unlike La.C.Cr.P. art. 230.2, does not explicitly supply immediate release as the remedy for the violation of the 48-hour limit. And thus the district attorney understands the holding of State v. Wallace to be restricted only to adults who were subjected to a warrantless arrest. We disagree.
La.C.Cr.P. art. 230.2 was enacted in 1992 — one year after Riverside was handed down. Article 230.2 A states, “Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest.” The article also explicitly | ^provides a remedy for a violation of that provision. “If a probable cause determination is not timely made in accordance with the provisions of Paragraph A of this Article, the arrested person shall be released on his own recognizance.” La.C.Cr.P. art. 230.2 B(l). The Louisiana Supreme Court, in Wallace, found La.C.Cr.P. art. 230.2, as applied to adults, is “particularly straightforward in mandating the release of a person arrested without a warrant for whom a probable cause determination has not been made within 48 hours of ... that person’s arrest.” Wallace, 09-1621, p. 6, 25 So.3d at 724.
La. Ch.C. art. 814 was enacted in 1991— shortly after Riverside was decided. Article 814 D states, “Within forty-eight hours after the child has been taken into custody, including legal holidays within the time computation, the court shall review the affidavit, and if it determines that probable cause exists, the child shall be held for a continued custody hearing pursuant to Article 819. If the court determines that probable cause does not exist, the child shall be released from custody.” Article 814 provides no explicit remedy, it is true, in the event that the police officer fails to submit an affidavit or the juvenile-court judge fails to review it within forty-eight hours to determine whether probable cause exists to continue the child’s detention. Because Article 814 was adopted to effectuate the Gerstein-Riverside protection, it would be anomalous that in such *804 event of dereliction of duty by either the police officer or the judge a child would be continued in custody.
Thus both articles were enacted after the Riverside was decided; they are grounded in and undoubtedly have their geneses in Riverside. See Wallace, 09-1621, at p. 5, 25 So.3d at 724-725 n. 5. Consequently, we read the Louisiana Supreme Court’s ruling in Wallace not as primarily a case of statutory interpretation but one of constitutional application. And we can see no reason, if |swe find in our review that a child’s right to a timely probable cause determination was violated, that we would not hold that the child, just as much as an adult, is “entitled to immediate release” from continued custody (albeit not on his own recognizance but instead into the care of his parents or guardian).[4] Wallace, 09-1621, p. 1, 25 So.3d at 721; also see La. Ch.C. art. 808 (all rights, except jury trial, guaranteed to adult defendants are guaranteed to children). This remedy, moreover, comports with the underlying policy set forth in La. Ch.C. art. 801 (“purpose of this Title is to accord due process to each child who is accused of having committed a delinquent act”).
Thus, we search for the remedy for the constitutional violation and not necessarily the remedy, expressed or unexpressed, for a state-specific procedural rule. We find that Gerstein requires a fair and reliable determination of probable cause either before or promptly after arrest “as a condition for any significant pretrial restraint”. 420 U.S. at 125, 95 S.Ct. 854 (emphasis added). Thus, if the condition is not fulfilled, the pretrial restraint must be terminated or, stated another way, the detainee released. And Riverside delimited the phrase “promptly after arrest” to ordinarily not exceed 48 hours. 500 U.S. at 56, 111 S.Ct. 1661. Therefore, when the 48-hour limit is exceeded, pretrial restraint must be terminated and the detainee released from custody.
Moreover, we cannot overlook that such prolonged detention for an adult can, by way of illustration, “impair his family relationships.” Gerstein, 420 U.S. at |10114, 95 S.Ct. 854. A fortiori can such prolonged detention negatively influence a child who is more “vulnerable” than an adult. Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183,161 L.Ed.2d 1 (2005).
B
The district attorney’s alternative argument is that, because of the subsequent finding of probable cause albeit outside of the 48-hour limit, the violation of K.W.’s right to a probable cause determination is cured. The essence of this argument is that, because K.W. either delayed in seeking his immediate release upon the expiration of the 48-hour limit or was unable to secure his immediate release before the commencement of the untimely probable cause hearing on account of an erroneous ruling by the trial judge, then the relief of immediate release which he now seeks is mooted by the untimely probable cause finding. This is an attractive argument, but we are compelled to reject it.
In support of this notion, the district attorney cites State in the Interest of C.R., 07-0233 (La.App. 4 Cir. 1/16/08), 976 So.2d 243, 246, which held that once probable cause has been found by a court, the issue *805 of release from custody pursuant to La. Ch.C. art. 814 D becomes moot. We, however, distinguish C.R. on two bases. First, in that case, the child waited until after the finding of probable cause to object to the timeliness of the probable cause hearing; here, K.W.S counsel objected prior to the late finding of probable cause by the juvenile-court judge. Second, C.R. was decided before Wallace, and its continued viability is necessarily undermined. See Wallace, 09-1621, p. 10, 25 So.Bd at 726 (“Finally, a finding of probable cause made at a ‘first appearance’ or 72-hour hearing does not [n‘cure’ the magistrates failure to make a probable cause determination within 48 hours.”).[5]
IV
Having rejected the district attorney’s argument, we turn now to clearly express that the remedy in delinquency proceedings for a child taken into custody without an order or warrant is immediate release from continued custody notwithstanding any later held proceedings resulting in a finding of probable cause. From the moment of the expiration of the 48-hour limit, if applicable, until a child’s adjudication as a delinquent, he may not be continued in custody if a judicial officer did not make a timely finding of probable cause. Moreover, the child’s failure to immediately assert that right upon the expiration of the 48-hour limit does not constitute a waiver of his right to be released from continued custody at any point until adjudication as a delinquent.
Before closing, we note that compliance with the 48-hour outside limit is hardly onerous. All that is required is for the arresting officer to furnish an affidavit to the judge from which the judge may make a finding of probable cause for taking the child into custody.
Also, we express concern about whether the Orleans Parish Juvenile Court is in compliance with the requirements of the Constitutions of the United States and Louisiana and Article 814. Unlike the Supreme Court, however, we do not have general supervisory over inferior courts; we only have supervisory jurisdiction over cases which arise in our circuit. See La. Const, art. 5, § 5(A) and 10(A). But we suggest that it should take note of the Supreme Court’s instructions to the | ^Criminal District Court in the Conclusion and Decree in Wallace. 09-1621, p. 10, 25 So.3d at 727.
And finally, returning to the case in which we are exercising our supervisory jurisdiction, it is important to cure the illegal detention of K.W. because in the absence of a timely probable cause determination his continued custody is illegal. See Wallace, 09-1621, p. 1, 25 So.3d at 721.
DECREE
Accordingly, we peremptorily grant K.W.’s application for supervisory relief, reverse the juvenile-court judge’s ruling denying his immediate release, and order KW.’s custodian to immediately release him into the care of his parents or guardian.
WRIT PEREMPTORILY GRANTED; RULING REVERSED; IMMEDIATE RELEASE ORDERED.

. This extends "to juveniles rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.” La. Ch.C. art. 808 cmt.

. We note in passing that neither the juvenile-court judge nor the district attorney attempted to justify the continued custody of K.W. beyond the 48-hour limit by claiming that a bona fide emergency or other extraordinary circumstance existed.

. During that same post-48-hour probable cause hearing, the investigating officer, Detective Thomas Perez of the New Orleans Police Department, who took K.W. into custody stated that he did not have a warrant for K.W.'s custody. Detective Perez testified that K.W. was not listed on the initial arrest warrant which named four other perpetrators. Eventually K.W. was identified from a picture released to the media. Detective Perez admitted that the police did not seek an arrest warrant at that point. Detective Perez explained that a warrant was never issued to take custody of K.W., and thus there was no judicial determination made as to whether probable cause existed prior to his seizure.

. It is important to note that an illegal arrest "does not void a subsequent conviction.... 'Thus, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on th[at] ground.’ ” State v. Wallace, 09-1621, p. 4 (La.11/6/09), 25 So.3d 720, 723 (quoting Gerstein, 420 U.S. at 119, 95 S.Ct. 854).

. "[T]he the idea that a violation of the 48-hour rule can be cured by a probable cause determination made after the 48 hours has expired ignores the clear language of the statute.” Wallace, 09-1621, p. 10, 25 So.3d at 727.