2024 IL App (1st) 240734-U

No. 1-24-00734B

Order filed June 5, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 MC 1100891 |
| | ) | |
| | ) | Honorable |
| ELVIS HERNANDEZ-PERNALETE, | ) | Kelly McCarthy, |
| | ) | Judge, Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's denial of pretrial release where Appellant was brought before a judge for his first appearance without unnecessary delay.

¶ 2    Appellant-Defendant Elvis Hernandez-Pernalete appeals from the circuit court's denial of pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), as recently amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) and commonly referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or Pretrial Fairness Act (Act). Hernandez-Pernalete contends that he was not brought before a judge within 48 hours of his arrest in violation of the Act. Although the Act does

not provide a remedy for such violation, Hernandez-Pernalete requests this court reverse the circuit court's denial of pretrial release and remand the case for a hearing on least restrictive conditions of release or, in the alternative, remand the case for a new detention hearing with instructions to exclude his police statement. For the following reasons, we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4       Hernandez-Pernalete was charged with the offenses of criminal sexual assault, aggravated battery premised on strangulation, and robbery during an incident occurring on March 16, 2024, and the offense of attempted robbery in a separate incident that occurred on the same day. Hernandez-Pernalete was arrested on March 18, 2024, at 5:07 p.m. He invoked his right to remain silent and asked for an attorney. He later gave a statement to the police on March 20 at 7:20 a.m., and the state's attorney's office approved the charges that afternoon.[1] Hernandez-Pernalete was brought before a judge for his initial appearance on March 21 at 11:55 a.m. In total, Hernandez-Pernalete was in custody for almost 67 hours before his first appearance.

¶ 5       The State filed a petition for pretrial detention. During the detention hearing, the State proffered the following facts. On March 16, 2024, at 8 p.m., the complainant was exiting the Chicago Transit Authority (CTA) Blue Line at the University of Illinois Chicago (UIC) Halsted station. CTA and UIC footage captured Hernandez-Pernalete following the complainant out of the train station. The complainant reported that, once they reached a bridge outside of the station, Hernandez-Pernalete wrapped his arms around her neck and torso from behind her, maneuvered her to the ground with his arms, and choked her while using his legs to hold her down. The complainant passed out, and Hernandez-Pernalete flipped her on her stomach and hunched her

---

[1] The State's memorandum provides "the State's Attorney's Office approved the charges that afternoon," and the supplemental document attached to Hernandez-Pernalete's notice of appeal provides "an assistant state's attorney approved the charges at 1:35 p.m."

back. He then removed her bracelet and rings. The complainant reported that she felt Hernandez-Pernalete's hands on her butt and finger apply "pressure" into her vagina. Hernandez-Pernalete informed police that he thought he killed the complainant and was attempting to move her body. A witness saw Hernandez-Pernalete on top of the complainant and later positively identified Hernandez-Pernalete as the suspect in a line-up. The witness believed Hernandez-Pernalete was a migrant and went to a migrant shelter. A security guard at the shelter was shown the CTA footage around the time of the incident. The security guard identified Hernandez-Pernalete in the still photos from the footage. Hernandez-Pernalete was "well-known" to the security guard and had been a resident at the shelter since November. The police recovered an outfit from Hernandez-Pernalete's belongings that he was seen wearing on the CTA footage.

¶ 6　　Another complainant believed someone was following her as she headed home from the Blue Line at the Irving Park station on March 16, 2024, at 11 p.m. CTA surveillance footage captured the complainant and Hernandez-Pernalete around that time. The complainant got to her apartment and went to unlock the front gate. Hernandez-Pernalete then grabbed her from behind and pulled her to the ground. Observing the incident, a neighbor began yelling and Hernandez-Pernalete ran off.  The complainant later spoke to the police. She identified Hernandez-Pernalete's jacket recovered from his belongings after his arrest and reported he was wearing a pair of jeans that was confirmed from the CTA footage and recovered from his belongings. The CTA footage revealed that Hernandez-Pernalete was wearing the same outfit during both incidents. Hernandez-Pernalete admitted that he "tried to rob the little woman in Irving Park. He forced her to the ground but got spooked off by her neighbor and then ran off."

¶ 7　　In mitigation, defense counsel questioned the visibility of the video footage and the reliability of the witnesses' identifications. Counsel then addressed Hernandez-Pernalete's background. He is 28 years old and has resided in a shelter for the past five months. He was born

in Venezuela, attended high school there, and served in the Venezuelan Army for five months. Hernandez-Pernalete regularly attends church, and his public safety assessment score was relatively low at a level 3. Counsel argued that the Global Positioning System or electronic monitoring could mitigate any potential safety risk to the complainants and the community.

¶ 8    Defense counsel also asserted that Hernandez-Pernalete was not brought before a judge within 48 hours of his arrest in violation of the Pretrial Fairness Act. Counsel requested that the circuit court not consider Hernandez-Pernalete's statement to police as a consequence of the statutory violation. The State argued that Hernandez-Pernalete was brought to court at the first available time and that no court was in session on March 20, 2024, the day the 48-hour period expired. The State claimed that the court should not suppress Hernandez-Pernalete's statement because it was made within the 48-hour period and such claim was appropriate for later suppression proceedings. The State contended that even if there was a violation, the statute does not provide a remedy and "the remedy would not be to deny the petition." Defense counsel responded that, although case law provides "some leeway" for the 48-hour statutory requirement, Hernandez-Pernalete was not brought before a judge at the first available time because he made his statement at 7:20 a.m. and the court was in session at 11:30 a.m. that day. Counsel believed Hernandez-Pernalete's time in custody pressured him to make a statement after he initially invoked his *Miranda* rights and asked for an attorney.

¶ 9    The circuit court determined there was no violation of the Pretrial Fairness Act. In so holding, the court found the police were "actively investigating two very serious cases" and that "[i]nterrogation was still happening and a statement was generated." Such ongoing investigation constituted reasonable delay under the Act. The court stated, while court was in session on the day Hernandez-Pernalete gave his statement, "we do have procedural cut offs for when people could be brought to court here timewise" and "last night court was not in session." Moreover, "[t]here

4

are procedures that the prosecutors have to go through at that point in terms of getting approval of charges, what the charges will be." The court further held the State satisfied its burden of proving by clear and convincing evidence that Hernandez-Pernalete should be detained and denied pretrial release.

¶ 10                                      II. JURISDICTION

¶ 11      The circuit court denied pretrial release on March 21, 2024. Hernandez-Pernalete appealed on April 2, 2024. We have jurisdiction to review the court's order pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023).

¶ 12                                        III. ANALYSIS

¶ 13      On appeal, Hernandez-Pernalete does not raise any challenges to the circuit court's denial of pretrial release based on the evidence of his safety risk. Hernandez-Pernalete solely argues that he was not brought without unnecessary delay before the nearest and most accessible judge within 48 hours after his arrest in violation of section 109-1(a) of the Pretrial Fairness Act (725 ILCS 5/109-1(a) (eff. Jan. 1, 2023). He claims that the ongoing police investigation and subsequent filing of charges did not justify his 67-hour delay. He admits that the statute does not provide a remedy for such violation and requests this court reverse the circuit court's denial of pretrial release and remand the case for a hearing to determine least restrictive conditions of release or, in the alternative, remand the case for a new detention hearing with instructions to exclude his police statement.

¶ 14      The State acknowledges that Hernandez-Pernalete was first brought before a judge more than 48 hours after his arrest but claims there is no violation of section 109-1(a) where his court appearance on March 21, 2024, was reasonably prompt and without unnecessary delay. The State

argues, even if a violation occurred, neither pretrial release nor suppression of his police statement is the appropriate remedy.

¶ 15     This issue presents a question of statutory interpretation. The primary objective of statutory interpretation is to ascertain and give effect to the legislature's intent. *People v. Gutman*, 2011 IL 110338, ¶ 12. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* This court views the statute as a whole construing words and phrases in light of other relevant statutory provisions and not in isolation. *Id.* Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id.* The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.* We presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Id.* Statutory interpretation is a question of law, and our review is *de novo. Id.*

¶ 16     Section 109-1(a) provides:

> "A person arrested with or without a warrant for an offense for which pretrial release may be denied under paragraphs (1) through (6) of Section 110-6.1 shall be taken without unnecessary delay before the nearest and most accessible judge in that county, except when such county is a participant in a regional jail authority, in which event such person may be taken to the nearest and most accessible judge, irrespective of the county where such judge presides, within 48 hours, and a charge shall be filed." 725 ILCS 5/901-1(a) (eff. Jan. 1, 2023).

¶ 17     In *People v. Ballard*, 206 Ill. 2d 151 (2002), our supreme court construed the phrase "without unnecessary delay" under a prior version of section 109-1(a). The question before the court was whether delay in bringing the defendant before the court contributed to the voluntariness of his confession. *Id.* at 176. In its analysis, the court explained that section 109-1(a) allows "some

latitude" in determining whether unnecessary delay occurred and "[p]resentment to a judge need be performed only with such reasonable promptness as the circumstances permit." *Id.* at 177.

¶ 18     The court further observed:

"once a defendant in lawful custody knowingly waived his or her *Miranda* rights and indicated a willingness to talk to police, section 109-1(a) does not obligate police to interrupt their interrogation as long as its length is not unreasonable, and the defendant's statements continue to be voluntary. The delay involved in taking a voluntary statement from a defendant under these circumstances is necessary within the meaning of section 109-1(a). [Citations.] The legislative directions that an accused be presented to a judge without unnecessary delay cannot mean that police officers must forsake all other duties to comply, and neither can they mean that the police do not have reasonable latitude to fully investigate a crime." (Internal quotation marks omitted.) *Id.* at 178.

¶ 19     This court continues to follow *Ballard*'s interpretation of "without unnecessary delay" after section 109-1(a) was amended to include the 48-hour requirement. See *People v. Williams*, 2024 IL App (1st) 232219-U, ¶ 30 ("[w]hile we recognize that since the passage of the Pretrial Fairness Act the statute has been amended to include a 48-hour deadline, we believe that the continued inclusion of the 'without unnecessary delay' language signals the legislature's intent to permit for 'some latitude' in fulfilling that deadline"); *People v. Garduno*, 2024 IL App (1st) 240405-U, ¶¶ 12-13 (applying *Williams* interpretation of "without unnecessary delay").

¶ 20     Considering this precedent, we find no violation of section 109-1(a). Hernandez-Pernalete was arrested on March 18, 2024, at 5:07 p.m. He initially invoked his right to remain silent and asked for an attorney but later gave a statement to the police on March 20 at 7:20 a.m. At this point, the police had to process the statement and evaluate his charges. The state's attorney's office

approved the charges on the afternoon of March 20. Hernandez-Pernalete was brought before a judge for his initial appearance on March 21 at 11:55 a.m.

¶ 21    Hernandez-Pernalete argues that he was not brought before a judge at the first available time because he gave his statement to police before the courthouse opened on March 20. However, this contention is rebutted by the record. The charges were not approved until the afternoon of March 20. The circuit court further stated that it has "procedural cut offs for when people could be brought to court here timewise" and "last night court was not in session." Given this, the first available time did not occur until Hernandez-Pernalete was brought before a judge on March 21. Hernandez-Pernalete does not provide any evidence that contradicts the circuit court's findings.

¶ 22    Hernandez-Pernalete further contends that it is unnecessary to delay his court appearance for the State to process charges when it "has wide latitude to amend, change, or dismiss charges at future proceedings." This argument fails to consider the implication of Hernandez-Pernalete's police statement. Once Hernandez-Pernalete made statements to police, it logically follows that the police would need to process the statement and evaluate the charges in light of this new evidence. Section 109-1(a) does not foreclose the police's duty to comply with procedures and fully investigate a crime. See *Ballard*, 206 Ill. 2d at 178. The delay in filing the charges was reasonable under these circumstances.

¶ 23    Hernandez-Pernalete asserts that ongoing police investigation does not justify delaying his court appearance. Relying on *Country of Riverside v. McLaughlin*, 500 U.S. 44 (1991), he claims that the 48-hour requirement already "contemplated the realities of gathering evidence, processing suspects, transport, and other practical challenges to bringing individuals to court." He further asserts that, under *McLaughlin*, delay is unreasonable where it occurs for the purpose of gathering additional evidence to justify the arrest, is motivated by ill will against the arrested individual, or is "delay for delay's sake."

¶ 24 We find *McLaughlin* distinguishable. The record does not show that the police were obtaining Hernandez-Pernalete's statement as to justify his arrest, particularly where the police already had eyewitness identifications and video footage surrounding the incident. Furthermore, the record is devoid of any evidence of ill will against Hernandez-Pernalete and there was no "delay for delay's sake" where the delay was attributed to his statement.

¶ 25 We hold there was no violation of section 109-1(a). In *Ballard*, our supreme court held that section 109-1(a) requires presentment before a judge "only with such reasonable promptness as the circumstances permit" and police are given "reasonable latitude" to process and investigate a crime. In this case, Hernandez-Pernalete reinitiated contact with police and gave a statement that the police had to process and evaluate in filing charges. Although the State approved the charges before the expiration of the 48-hour period, the circuit court stated there were "procedural cut offs" when bringing arrestees before the court and night court was not in session on March 20. Without any evidence to the contrary, we find Hernandez-Pernalete was brought before a judge with reasonable promptness and without unnecessary delay in accordance with section 109-1(a). In light of our disposition, we need not address Hernandez-Pernalete's argument concerning the appropriate remedy for a section 109-1(a) violation because we find no violation.

¶ 26                                    IV. CONCLUSION

¶ 27  We affirm the circuit court's denial of pretrial release.

¶ 28 Affirmed.